HENRY S. MORRIS, OSCAR HECKER and LEWIS J. LINK,

*vs.*

AMERICAN PUBLIC UTILITIES COMPANY, a corporation organized and existing under the laws of the State of Delaware.

*New Castle, Nov.* 23, 1923.

A corporate charter is a contract between the state and the corporation and its stockholders, and between the corporation and its stockholders, and there is as well a contractual relationship in many particulars between stockholders *inter sese.*

There is impliedly written into every corporate charter, as a constituent part thereof every pertinent provision of our Constitution and statutes.

Under *General Corporation Act,* § 13, authorizing charter provision for issuance of preferred stock and *Section* 26 (both amended by 29 *Delaware Laws, c.* 113), permitting charter amendments, but providing that, where preferences are changed, the stockholders affected shall be permitted to vote, a charter amendment, adopted at stockholders' meeting, changing the original preference of preferred stock in its relation to earnings and assets, but not in relation to the common stock, was valid, in the absence of a charter provision forbidding it, as it is in strict pursuance of the statute, which is part of the charter.

In the absence of a charter provision, an amendment creating new classes of preferred stock and canceling accumulated dividends could not disturb preferred stockholders' rights to accrued dividend preferences, because they are vested property interests in the nature of a debt, notwithstanding *General Corporation Act,* § 26, as amended by 29 *Delaware Laws, c.* 113, permitting preferences to be changed by amendment.

If the articles of incorporation so provide, members of a corporation may give to a majority of a class of stockholders the right to cancel obligations which the entire class might hold against the corporation, even though some of the class refuse their assent.

Under *General Corporation Act,* § 13, permitting corporations to issue preferred stock, and *Section* 26 (both amended by 29 *Delaware Laws, c.* 113), providing for amendments by making any lawful change or alteration, including alterations of preferred stock preferences, the word "cumulative," in a charter providing for cumulative preferred stock dividends, gave to matured and accrued dividends the nature of a debt, and prevented their destruction by subsequent charter amendment changing preferences.

In the absence of special charter or statute provision, *General Corporation Act*, § 26, as amended by 29 *Delaware Laws*, *c.* 113, permitting any amendment to corporation articles that could legally have been inserted originally, did not authorize an amendment destroying preferred stockholders' rights to accrued cumulative dividends, since that would impair the obligation of the contract between stockholders created by the stock certificate.

Where the preferences of preferred stock are lawfully altered by an amendment creating two new classes of stock which enjoy rights ahead of the old, a holder of shares of the old stock is not entitled to an injunction against the payment of dividends on the new stock ahead of accumulated dividends due it, its preferred right to such dividends being secured to it only as against the common stock upon which no dividends are threatened to be paid or declared.

*General Corporation Act*, § 13, as amended by 29 *Delaware Laws*, *c.* 13, providing that "any or all classes of preferred stock may * * * be made subject to redemption at such * * * price, not less than par, as may be expressed in the certificate of incorporation or an amendment thereof," sufficiently authorized an amendment changing the price at which the corporation might redeem preferred stock from $105 to $100, the par value.

The repeal of the provision of *Constitution* 1897, which was construed to prohibit the Legislature from depriving preferred stockholders of their right to vote at stockholders meetings, authorized the Legislature to empower corporations to deny such right, unless expressly denied to the corporation in the certificate of incorporation.

Denial of the right to vote at stockholders' meetings is not such a change in property rights as to be exempt from the tampering effect of amendment, where general power to amend is reserved.

INJUNCTION BILL. American Public Utilities Company, the defendant, was incorporated under the *General Corporation Law* of this State (*Revised Code* 1915, § 1915 *et seq.*) on June 8, 1912. The amount of its authorized capital was fixed at $40,000,000, divided into 400,000 shares, of the par value of $100 each. Of this amount 200,000 shares were preferred stock and 200,000 shares common stock. By the certificate of incorporation the following provision was made with respect to the rights and privileges of the preferred stock:

"The holders of the preferred stock are entitled to receive, when and as declared from the surplus or net profits of the corporation, yearly dividends at the rate of, but never exceeding, six per centum per annum on the par value thereof, payable quarterly, on dates to be fixed by the by-laws. The dividends on such preferred stock shall be cumulative, and shall be payable before any

dividends on the common stock shall be paid or set apart, so that if in any year dividends amounting to six per centum shall not have been paid on such preferred stock, the deficiency shall be payable before any dividends shall be paid upon or set apart for the common stock.  *  *  *  The right and privilege is reserved to the corporation on any dividend payment date to redeem all or any part of the preferred stock of the corporation by paying to the holders thereof one hundred and five dollars ($105) per share and the amount of all cumulative dividends accrued and unpaid thereon at the date fixed for such redemption."

The complainants are holders of 375 shares of the preferred stock of the defendant corporation, the same having been originally issued by the defendant prior to April 1, 1918.  Since the filing of the bill other parties complainant have been permitted to intervene.  The interveners hold a total of 513 shares of the preferred stock.

Since the organization of the defendant, preferred dividends of six per cent. have been declared and paid on the preferred stock outstanding for each of the years 1912 to 1917, inclusive.  Commencing on April 1, 1918, the defendant declared preferred dividends of one and one-half per cent. payable in scrip for each of five quarters.  The total dividends payable in scrip equaled seven and one-half per cent., of which three per cent. was paid off on April 1, 1923, leaving a balance thereof unpaid of four and one-half per cent.

No dividends have been declared and paid since April 1, 1919, either in cash or otherwise, down to June of the present year. On the preferred stock issued prior to April 1, 1919, in addition to the balance of four and one-half per cent. due in scrip, dividends in arrear and unpaid have accumulated in the total amount of twenty-four per cent. up to April 1, 1923.

A meeting of the stockholders of the defendant corporation was held at Grand Rapids, Michigan, on February 19, 1923, at which a proposed amendment to the certificate of incorporation was adopted whereby paragraph four of the original certificate was stricken out and a new paragraph four substituted therefor.  The paragraph thus dealt with was the paragraph which defined the authorized capital of the company, the shares into which it was divided, and the number and classes of stock, together with the rights, preferences and restrictions of each class.  The amendment received

Morris, et al., *vs.* Amer. Pub. Utilities Co.    139

Statement of the Case.

the support of 27,851, shares out of 44,659 shares of preferred stock outstanding and 21,512 shares out of 28,240 shares of common stock then outstanding.    No shares of common stock and 417 shares of the preferred stock voted in opposition to the amendment.

The amendment is a lengthy one and only the substance and effect thereof will be stated.   Whereas, before, the classes of stock consisted of common and a single kind of preferred, now under the amendment the classes of stock consist of common and three kinds of preferred.   The total authorized capital remains as before at $40,000,000, consisting of 400,000 shares of the par value of $100 each.   The three kinds of preferred stock are designated by the amendment as "prior preferred stock," "participating preferred stock" and "six per cent. preferred stock."

The prior preferred stock is entitled to a seven per cent. cumulative dividend commencing from April 1, 1923, before dividends any other class of stock are paid, and is entitled on dissolution to be first paid off at par and accumulated dividends before anything is paid on any other class of stock.   It is redeemable at any time at the option of the company in whole or in part at $110 and accrued dividends.   The amendment authorized 100,000 shares of this class of stock of the aggregate par value of $10,000,000.

The participating preferred stock is entitled to dividends at the rate of four per cent., commencing April 1, 1923, for the year 1923, five per cent. for the year 1924, six per cent. for the year 1925, and seven per cent. for the year 1926 and each year thereafter.   The right to these dividends is subordinate to the dividend rights of the prior preferred stock, but takes precedence over the six per cent. preferred stock and the common stock.   In case the earnings in any year are such as to justify a dividend to the common stock as high as six per cent. and the same is declared, then the participating preferred stock is further entitled to participate in such earnings to the extent of an additional one per cent.   This class of preferred stock on dissolution receives par and accumulated dividends next after the prior preferred stock and before any other class of stock receives anything.   It is redeemable at the option of the company either in whole or in part at $105 and accrued dividends.   The amendment authorizes 100,000 shares of this class of stock of the aggregate par value of $10,000,000.

The six per cent. preferred stock, after the dividends of the two preceding classes are provided for, is entitled to a dividend of six per cent. before any dividend may be paid to the common stock. This dividend is cumulative and commences from April 1, 1923. It is entitled on dissolution, after the preferences of the two preceding classes are satisfied, to receive par and accrued dividends, and may be redeemed at any time at the option of the company, either in whole or in part at par and accrued dividends. The amendment authorizes 50,000 shares of this class of stock of the aggregate par value of $5,000,000.

The amendment then authorizes 150,000 shares of common stock of the aggregate par value of $15,000,000, which of course is subordinate to the rights of all three classes of preferred stock, both in the matter of dividends and on dissolution.

Having thus reconstructed the authorized capital of the company, the amendment proceeds to fit the old preferred stock into the new scheme by providing that all such preferred stock outstanding at the date of the adoption of the amendment "shall thereafter for all purposes be considered six per cent. preferred stock, with the rights and preferences hereinbefore in this section stated"; that is to say, with the rights and preferences in substance as above outlined. It is further provided by the amendment that holders of outstanding preferred stock may surrender the same and for each share so surrendered together with cash or dividend scrip in the amount of $7.50, receive in exchange eight-tenths of a share of the new participating preferred stock.

By the amendment no class of preferred stock is entitled to vote at meetings of stockholders, except when it is proposed to amend the certificate in a way which will affect the preferences of a particular class, in which event the holders of stock of that class may vote.

As stated, the amendment making the foregoing changes in the certificate was adopted at a stockholders' meeting. The bill assails the legality of the meeting because of alleged defects in the call and notice thereof, but at the argument this aspect of the bill was abandoned. It is admitted that the requisite majority of both the outstanding preferred stock and of the common stock voted in favor of the amendment. The bill also attacks the right of the

corporation under the law of this State to adopt by way of amendment to its certificate such an alteration in its capital structure as the amendment in question accomplishes.

None of the complainants or interveners voted for the amendment, nor have any of them agreed or assented thereto. No question is made as to the competency of the complainants or interveners to raise the question involved.

After the adoption of the amendment, the directors of the corporation on June 16, 1923, declared a quarterly dividend of one and three-fourths per cent. on the prior preferred stock and a quarterly dividend of one per cent. on the participating preferred stock, both payable on July 1, 1923. No provision was made for the payment of the accrued and unpaid dividends upon the old cumulative preferred stock held by the complainants.

The bill alleges that the amendment above referred to is void and of no binding effect upon the complainants and others similarly situated; but if, however, the amendment should be held to be legally adopted and otherwise valid, yet the bill alleges the corporation has no right under the law to declare and pay dividends upon any of the new classes of preferred stock until it has first declared and paid the accrued dividends due on the old preferred stock held by the complainants.

The prayer is that the amendment be declared void as against the complainants and others similarly situated, and that the company be enjoined from paying dividends upon the new classes of preferred stock until the dividends accrued and unpaid on the preferred stock held by the complainants are fully paid.

The cause came on to be heard upon bill, answer and agreed statement of facts.

*Robert Pennington* and *Charles C. Keedy* for the complainants and interveners.

*E. Ennalls Berl* and *Charles McPherson*, of Grand Rapids, Michigan, for the defendant.

The Chancellor. The stipulation of the parties states that the purpose of the bill of complaint is, first, to secure the determination of this court as to whether or not the amendment to the

certificate of incorporation is valid; and, second, to obtain a permanent injunction against the corporation, enjoining it from paying any dividends upon the new classes of preferred stock created under said amendment and, of course, upon any of the common stock (which was unaffected by the amendment) until the corporation paid out of the accumulated profits now on hand, or thereafter obtained, the cumulative, accrued and unpaid dividends upon such of the preferred stock issued under the original certificate of incorporation as is now outstanding.

With respect to preferred stock of a corporation of this State the law in *Section* 13 of the *General Corporation Act* provides as follows:

"Sec. 13. *Kinds of Stock—Preferred Stock.*— Every corporation shall have power to create two or more classes of stock, with such designations, preferences and voting powers, or restrictions or qualifications thereof, as shall be stated and expressed in the certificate of incorporation; and the power to increase or decrease the stock, as in this act elsewhere provided, shall apply to any or all of the classes of stock. Any or all classes of preferred stock may, if desired, be made subject to redemption at such time or times, and at such price, not less than par, as may be expressed in the certificate of incorporation or an amendment thereof; and the holders of any preferred stock shall be entitled to receive and the corporation shall be bound to pay thereon dividends at such rates and on such conditions as shall be stated in the certificate of incorporation, or an amendment thereof, payable quarterly, half-yearly or yearly, before any dividends shall be set apart or paid on the common stock; and when any such quarterly, half-yearly or yearly preferred dividend shall have been paid or set aside as herein provided, a dividend upon the common stock may then be paid out of the remaining surplus or net profits of the company; and such preferred dividends may be made cumulative; and in no event shall a holder of preferred stock be personally liable for the debts of the corporation; but in case of insolvency, its debts or other liabilities shall be paid in preference to the preferred stock. Unless its original or amended charter or certificate of incorporation shall so provide, no corporation shall create preferred stock. The terms 'general stock' and 'common stock' are synonymous."

By virtue of the foregoing section the defendant company at its incorporation created a class of preferred stock and out of the same duly issued the shares which constitute the complainants' present holdings. This stock, in addition to the privileges described in the statement of facts, is conceded to have also had the right to vote at meetings of stockholders.

It is apparent that the original preferred stock is very materially affected by the amendment in the rights and privileges which prior to the amendment it enjoyed. Before referring in detail to the changes which the amendment effected in the matter of the rights and privileges of the original preferred stock, it is well at this point to set out the section of the *General Corporation Law* which confers upon corporations created under it the right to amend the articles of incorporation. Omitting those portions which are immaterial to the present controversy, the section is as follows:

"*Sec. 26. Charter How Amended—When Corporation Has Capital Stock—When Corporation Has No Capital Stock.*—Any corporation of this State existing prior to the tenth day of March, 1899, whether created by special act, or general law, or any corporation created under the provisions of this chapter, may, from time to time, when and as desired, amend its charter of incorporation, either by addition to its corporate powers and purposes, or diminution thereof; or by substitution of other powers and purposes, in whole or in part, for those prescribed by its charter; or by increasing or decreasing its authorized capital stock; or by changing the number and par value of the shares of its capital stock; or by changing its corporate title; or by making any other change or alteration in its charter of incorporation that may be desired: Provided that such amendment, change or alteration shall contain only such provisions as it would be lawful and proper to insert in an original certificate of incorporation made at the time of making such amendment.

" * * * Provided, however, that if any such proposed amendment would alter or change the preferences given to any one or more classes of preferred stock, authorized by the certificate of incorporation, or would increase or decrease the amount of the authorized stock of such class or classes of preferred stock, or would increase or decrease the par value thereof, then the holders of the stock of each class of preferred stock so affected by the amendment shall be entitled to vote as a class upon such amendment, whether by the terms of the certificate of incorporation such class be entitled to vote or not; and the affirmative vote of a majority in interest of each such class of preferred stock so affected by the amendment shall be necessary to the adoption thereof, in addition to the affirmative vote of a majority of every other class of stock entitled to vote thereon, but the certificate of incorporation may contain provisions requiring the affirmative vote of a larger proportion of such preferred stock for the adoption of such amendment."

That the foregoing section is to be regarded as having been written into the corporate constitution of this corporation, and that as against these complainants the corporation may lawfully

do everything which it properly authorizes, is not disputed by the complainants. At the argument this was conceded and the briefs presented to me make no contention to the contrary.

In discussing the two points which the solicitors for the parties agree are presented for determination, they will be disposed of in the order above stated.

First. Is the amendment to the certificate of incorporation valid as against the complainants? In view of the concession made by the solicitors for the complainants, that aspect of the bill which complains of the insufficiency of the notice of the stockholders' meeting need be no longer considered. All that is left under this head is whether, or not, the action taken is authorized by the law.

. There is no question raised by the case as to the extent of the power reserved by the State to amend, alter or repeal the act under which the defendant holds its corporate charter. The sole question is as to the manner in which the corporation has exercised the powers which the State has conferred upon it. That a corporate charter is a contract has been long settled. In *Garey v. St. Joe Mining Co.*, 32 *Utah*, 497, 513, 91 *Pac.* 369, 374 (12 *L. R. A.* [*N. S.*] 554), it is spoken of as "a dual contract—one between the state and the corporation and its stockholders, the other between the corporation and its stockholders." That there is a third aspect in which the contract may be regarded would appear clear, for not only is there a contractual tie binding in the two respects observed by the Utah court but there is as well a contractual relation in many particulars existing between the stockholders *inter sese*. This third relationship found a practical recognition in *Pronick v. Spirits Distributing Co.*, 58 *N. J. Eq.* 97, 42 *Atl.* 586. With respect to the amendment of which the bill in this case complains, its effect insofar as contractual relationships are concerned would seem to bear just as much upon those existing between the stockholders *inter sese* as upon those existing between the corporation and its stockholders. It not only alters the corporation's obligation to the preferred stockholders by destroying accumulated dividends, but it disturbs the inter-relationships theretofore existing between the stockholders themselves by giving the holders of other classes of stock certain newly created preferences, by

conferring a benefit upon the common stockholders through cancellation of accrued preferred dividends and by depriving the old preferred stock of its right to vote at the stockholders' meetings, a right which it originally enjoyed.

It would appear plain, therefore, that the amendment in question not only dealt with the contract of the corporation with its stockholders, but as well with the relations existing between the stockholders themselves. The case is to be regarded then as one which calls for the construction of the contract which the amendment alters and particularly for an answer to the question of whether, under any aspect of the matter, the terms of the contract permit such a change as the amendment effects.

For the terms of the contract we are to refer to the appropriate provisions of the certificate of incorporation and the law of the State. "There is impliedly written into every corporate charter in this State, as a constituent part thereof, every pertinent provision of our Constitution and statutes." *Peters v. U. S. Mortgage Co.*, 13 *Del. Ch.* 11, 114 *Atl.* 598. This being so, the defendant points to the provision of the law providing for amendments to the certificate of incorporation (see *Section* 26, *supra*) as supplying ample authority for the amendment in question. The contention is that the course pursued was plainly authorized by the quoted section. I shall now examine the particulars in which the amendment altered the rights of the preferred stockholders with the view of ascertaining whether or not such alterations are warranted by the section referred to.

The parties by their stipulation agree that the rights of the complainants as preferred stockholders are changed by the amendment in the following respects:

(a) Their stock is made junior to two new classes of preferred stock created by the amendment so far as all privileges and rights are concerned.

(b) Accumulated dividends to the amount of twenty-four per cent. are cancelled.

(c) The redemption figure of $105 per share and the amount of all accumulated dividends accrued thereon, as provided in the original certificate, was changed, so that thereafter such stock could be redeemed by the corporation at $100 per share, with

cumulative dividends only from the date of the adoption of the amendment.

(d) The right of the preferred stock to vote was taken away from said preferred stock and was thereafter vested only in the common stock of the corporation.

With respect to (a) it would seem plain that only a preference is involved. The original preferred stock enjoyed under the articles of incorporation a preference over the common stock. Nowhere was it provided that it should itself be free from the burden of a preference in favor of classes of stock to be created. When it was issued, it was the senior among the then authorized classes. Now it is junior to two new classes, because by the amendment, if it is not converted as specified, it is stripped of its original identity and is changed into a new stock known as "six per cent. preferred stock" which is subordinate to the prior preferred stock and the participating preferred stock. What has occurred, therefore, is that the preference which the original preferred stock enjoyed has been changed or altered. This is not so, however, when it is thought of in relation to the common stock, for the amendment in no wise touches or disturbs the preference over the common stock which the certificate originally created. But it is so when it is thought of in its relation to earnings and assets, for in relation to these it no longer stands first in claim after debts but third, following after the two new classes. In this sense, the preference originally enjoyed by the preferred stock has been altered or changed. *Section* 26, which as before indicated is to be read into the original certificate of incorporation, in that portion of it which provides that no change or alteration in the preferences of any class of stock shall be made unless a majority of the shares of the class concerned in the change votes in favor thereof, very clearly indicates that a change or alteration of any preference may be made. One of the conditions upon which the complainants as preferred stockholders enjoyed this preference was that it might at any time be changed and altered upon the approval of a majority of its holders. It is apparent that the change now being considered was made in strict pursuance of one of the terms of the contract which the members of the corporation had adopted for their governance. There can be no valid objection under this head.

With respect to (b), the point here made presents itself in another light. After careful consideration I am persuaded that the attempt to destroy the right of an objecting preferred stockholder to accrued and unpaid dividends cannot be sustained.

What is the nature of a preferred stockholder's right to accrued and unpaid dividends? Is it within the meaning of the word "preferences" as that term is used in *Section* 26 of the *General Corporation Law* of this State? If it is, then it would be arguable that any corporation into whose articles of incorporation this section is to be read, would have the right to destroy it. Though to so argue, one would have to deduce from the power "to alter or change the preferences" the power to destroy them. I am not called upon, however, to examine such argument, for in the view which I take of the matter the right of the preferred stockholder to accrued and unpaid dividends, though the same have never been declared, cannot be said to constitute a preference within the meaning of the section. My attention has not been called to any case wherein the precise question now presented has been considered. There are cases, however, in which the right to preferred dividends in arrears has been discussed and the nature of the right considered in situations different from that here presented. *Roberts v. Roberts-Wicks Co.*, 184 *N. Y.* 257, 77 *N. E.* 13, 3 *L. R. A.* (*N. S.*) 1034, 112 *Am. St. Rep.* 607, 6 *Ann. Cas.* 213, was such a case. That was a case of a corporation which had issued common stock and a six per cent. cumulative preferred stock. The latter stock was entitled to be paid its dividend before any dividends were payable to the common stock and such dividends were made cumulative. The provision defining the preference was in substance the same as is found in the instant case. The plaintiff acquired 250 shares of the preferred stock. Later, because of impairment of capital, the company reduced its authorized capital stock, common and preferred. After the reduction the plaintiff received for her 250 shares of preferred stock theretofore held by her 166 shares of preferred stock. Before the reduction, dividends had accumulated on the plaintiff's 250 shares for the period of four years. After reducing its capital the company prospered and declared a dividend on the outstanding preferred stock and one per cent. on the common. The plaintiff contended that no dividend could be paid on

the common stock until the arrears on all the preferred stock held by her prior to the reduction was paid; that is to say, that the company was bound before it paid anything on the common stock to pay in full the arrearages due not only on the 166 shares of preferred stock then held by the plaintiff, but as well on the 84 other shares which she had held down to cancellation by the reduction. This contention led the Court of Appeals to discuss the nature of the right which holders of preferred stock have against the issuing corporation when cumulative dividends are in arrears. Throughout the opinion, the obligation of the corporation is spoken of as an "indebtedness," a "debt," and the rights of the stockholder to cumulated dividends are spoken of as a "prior charge upon the net earnings." The preferred stockholders in such case are described as "creditors." The language of the court at one point is:

"They [preferred stockholders] may not have been creditors of the corporation, in a technical sense; but, as between themselves and other stockholders, they were as creditors, with demands to be fully paid certain arrears of dividends before any of the surplus profits should be appropriated to a dividend upon the common stock."

There is a class of cases in which corporations have become merged into a consolidated company and thereby the stock of the constituent companies has been displaced by the stock of the new company. In such cases where the consolidated company assumed the debts and obligations of the merging companies, the question has sometimes arisen as to whether or not under such assumption of obligations the new company has become bound to pay arrears of dividends on the cumulative preferred stock of one of the constituent companies before it may declare a dividend on its own common stock. Such is not the situation in the instant case. But cases of this kind have evoked a discussion of the question as to what is the nature of the right of a preferred stockholder to cumulative dividends in arrear upon the stock of one of the companies brought into the merged organization. *Boardman, et al., v. Lake Shore & Michigan Southern Railway Co.*, 84 N. Y. 157, was a case of this kind. In that case it was held that the consolidated corporation was bound before paying dividends on its own common stock to pay the arrearages on the cumulative preferred stock

of one of the merged corporations on the ground that such unpaid dividends, though never declared, constituted a debt and obligation of the old company, and being such the new company was bound to pay them.

Another case of this same type is found reported in *Colgate v. U. S. Leather Co.*, 73 *N. J. Eq.* 72, 67 *Atl.* 657. There it was held that the rights to accrued and undeclared dividends due on the cumulative preferred stock of one of the merging companies was unaffected by the consolidation, and that the consolidated company was bound therefor. The theory on which this ruling was based was that under the law authorizing the consolidation, all the debts, liabilities and duties of the consolidating corporation attached to the new or consolidated corporation, and preferred dividends in arrear were held to fall within this language. Such dividends were said to be a charge on the earnings of the former corporation. They were to be sure in that case expressly declared so to be by the articles of incorporation. In the instant case, while there is no language in the certificate of incorporation expressly making the preferred dividends a charge on the earnings ahead of the common stock, yet in substance such is the effect. The New Jersey case, therefore, is pertinent here upon the question of the nature and character of the right to the past-due dividends. In that case Vice Chancellor Emery observed that while the preferred stockholder was not by reason of the unpaid dividends a technical creditor of the corporation, yet the company was under a liability or duty to pay him the unpaid dividends out of earnings before either these earnings or any property of the company representing them could be distributed to the holders of the common stock by the consolidation agreement.

While it is true that a holder of cumulative preferred stock is not a creditor of the corporation, so as to entitle him to bring suit at law against the corporation for dividends in arrear, but not declared (*American Steel Foundries v. Lazear, et al.*, 204 *Fed.* 204, 124 *C. C. A.* 231) yet, considering the relations of the stockholders *inter sese* in such a case as the instant one, there is every reason to hold that as soon as the agreed dividend which the preferred stockholder is to receive is matured by time, a right to its ultimate payment as against those who have agreed to its payment

becomes a vested right. It is a present property interest. The period of its enjoyment may be deferred by the directors of the corporation in the legitimate exercise of their discretion in the management of the corporate affairs and thereby the privilege of asserting the right to the dividend in a suit or action may be postponed. This, however, does not in any wise impair the status of the preferred stockholder as the owner of a present right against the corporation assertable upon the arising of the proper contingency, viz., when the earnings are such as to justify the declaration of a dividend. Nor is the fact that the preferred stockholder may be required to await the contingency of adequate earnings sufficient to deprive him of the right to be regarded in substance as a creditor as against the common stockholders.

If the foregoing views are sound, then it follows that the amendment in question disturbs the rights of the complainants, not in the enjoyment of a preference, but rather in the enjoyment of a vested right. It takes from an objecting stockholder that which in a real sense is his individual property interest. If the articles of incorporation so provide, I know of nothing in the law which would forbid the members of a corporation to give to a majority of a class of stockholders the right to cancel obligations which the entire class might hold against the corporation, even though some of the class might refuse their assent to such procedure. If such a power is agreed upon, then its exercise would be no more than the assertion of a stipulated right. Such appears to have been the situation in the following English cases cited by the defendant and confidently relied upon by it: *Oban and Aultmore Glenlivet Distilleries, Ltd.*, 5 *Court of Sessions Cases* (1903) 1140; *Welsbach Incandescent Light Co., Ltd.* [1904] 1 *Ch.* 87; and *Last, et al., v. Buller & Co., Ltd., et al.*, [1919] *Ch. Div.* 36, *Times L. Rep.* 35. In the first two of these cases the articles of association contained an agreement between the shareholders that all "rights and privileges attached to any class of shares may be modified by an extraordinary resolution," etc., while in the last one the articles of association contained an agreement that "all or any of the special rights and privileges attached to any class of shares might be modified, abrogated and altered" with the sanction of an extraordinary resolution of the shareholders. In these three English

cases it, therefore, appears there was a stipulation that "rights and privileges" could be modified.

There is, of course, no such phraseology in the articles of incorporation in the instant case, and such phraseology is very much broader than is the language contained in *Section* 26 of our *General Corporation Act*, which might be regarded as analogous to the particular one of the articles of association referred to in the foregoing English cases. Our *Section* 26 provides only that preferences may be altered or changed. It contains no reference to "rights and privileges." Thus the English cases are distinguishable from the instant one.

The defendant has cited *Peters v. U. S. Mortgage Co., et al.,* 13 *Del. Ch.* 11, 114 *Atl.* 598, as authority in support of its contention that the amendment in question is legally permissible. That case is distinguishable because it dealt, not with dividends past due, but with the right to dividends in the future. The amendment in that case took away the right which the preferred stock had theretofore enjoyed of participating in earnings after payment of seven per cent. on the common stock. It was there held that this was only an alteration in preferences. That the decision in that case that it was competent for the majority of the preferred and common stockholders to make such a change in rate effective in the future was correct, I am persuaded is true, not only because of the conception that the proposed change spoke only of the future and dealt with dividend periods yet to come, but as well because of the language which is found in *Section* 13 of the act (*supra*), where it is provided that preferred stock shall be entitled to receive "dividends at such rates and on such conditions as shall be stated in the certificate of incorporation, *or an amendment thereof.*" This language clearly indicates an authority to change by amendment the rate of dividend which preferred stock is to receive. The *Peters Case* is, therefore, distinguishable from the instant one.

We are not here dealing with that feature of the preferred stock in question which concerns the extent of its preference as measured by the rate of dividend. We are dealing with its cumulative feature. No such question was involved in the *Peters Case*. The provision in the certificate of incorporation which declares

that the preferred stock dividends shall be "cumulative" consti-
tutes an obstacle in the path of the defendant's argument which
in my view is insurmountable.     This is the word which gives
an accrued and matured dividend the nature and quality of a
debt which that class of members to whom it is owed are entitled
to have paid before that class of members who have agreed to its
payment may receive anything.     Such dividend is somewhat
analogous to a dividend which has been declared on common
stock but unpaid. It cannot, to be sure, be sued for as in the case
of a declared dividend.   But it has matured and constitutes just
as much a present, vested right, and when the, occasion arises is
entitled as such to be protected in an appropriate manner.   So
far as the vesting of the right is concerned, the passage of time
over the dividend year has the same effect with respect to the
rights of cumulative preferred stock as does the declaration of a
dividend on the common stock with respect to the rights of com-
mon stockholders.   The distinguishing feature between the two
cases is that whereas with respect to the common stock its  holders
are entitled to be, promptly paid on the date named in the resolu-
tion declaring the dividend, with respect to the cumulative pre-
ferred stock the date of payment may be deferred in the legitimate
exercise of the discretion of the directors even though there have
been profits available for dividends, and, if there have been no
profits current or accumulated, must be deferred.   In each case,
however, it is equally true that a property interest has arisen and
become  vested.

Thus far I have discussed the attempt of the amendment to
destroy the right to accumulated dividends as though it were
justified solely on the theory that it is an alteration or change in
preference.  My conclusion is that it cannot be so justified.  The
defendant, however, does not confine itself to this theory alone.
It further contends that even though it be conceded that the
amendment does not in this particular fall within the authority of
the law which permits an alteration in preferences, it is neverthe-
less justified by the first portion of *Section* 26 which provides in
general terms that any corporation may amend its certificate of
incorporation, "either by addition to its corporate powers and pur-
poses, or diminution thereof; * * * or by making any other

Morris, et al., *vs.* Amer. Pub. Utilities Co.        153

Opinion.

change or alteration in its charter of incorporation that may be desired: Provided that such amendment, change or alteration shall contain only such provisions as it would be lawful and proper to insert in an original certificate of. incorporation made at the time of making such amendment."

The case of *Pronick v. Spirits Distributing Co.*, 58 *N. J. Eq.* 97, 42 *Atl.* 586, is an authority against this contention. In that case the stockholders attempted by amendment to reduce the rate of dividend to which the preferred stock was entitled under the terms of its issue, and the Vice Chancellor held that such reduction was not permissible. It could not have been justified under such language as is found in our *Section* 26, wherein preferences are dealt with, or as is found in *Section* 13 in the particular above pointed out, for the New Jersey law contained no such language, or if it does the report of the case makes no reference to it. In the *Pronick Case* the attempted amendment was sought to be justified by the general clause in the New Jersey act authorizing amendments to certificates of incorporation. That general clause permitted any corporation to "amend its original certificate." Though this clause is less verbose than is our analogous general clause above quoted, yet in substance so far as the present question is concerned it is the same. In holding that the corporation in that case derived no authority from the general clause to amend its certificate in the particular attempted, the Vice Chancellor said:

"These provisions as to amendments are, under our decisions, to be regarded as incorporated into the original certificates of corporations subsequently organized, and are relied on by the company as authorizing the amendments now proposed. In my judgment these general powers of amendment of the certificate, which originally fixed the relation between the stockholders *inter sese*, do not confer the power of altering the previous contract of the company itself with the stockholders, as to the rate of dividend which was created by a stock certificate, or contract of the company, which was required by the statute to express this rate of dividend, and which reserved no power in the company to change. Such alteration would impair the obligation of the contract created by the stock certificate issued under the company's charter."

This holding has never met with subsequent disapproval in the Courts of New Jersey. While it never went to the Court of Errors and Appeals of that State, yet it was cited in an opinion

which that court accepted for its own and no disapproving comment thereon was made. *Lazear, et al., v. American Steel Foundries,* 86 *N. J. Eq.* 21, 252, 98 *Atl.* 642. The *Pronick Case* is a clear authority to the effect that a clause such as we find here conveying a general power of amendment of a certificate of incorporation cannot have the effect of authorizing an alteration and rearrangement of the relationship existing between the stockholders *inter sese,* and I accept it as expressive of the correct rule.

The conclusion, therefore, with respect to the point designated as (b) is, that the complainants are entitled to a preservation of their rights to the twenty-four per cent. dividends heretofore accrued on their stock and unpaid. The corporation cannot without their consent destroy it. To hold otherwise would be to say that other people might take from a man his vested property right against his will and appropriate it to others. The proposition amounts to this, because if the company prospers the common stockholders will reap the benefit of what the preferred stockholders are deprived of. Before this result can be permitted the law governing the corporation as it is found in the certificate and statutes must plainly indicate an intent thereto.

What is the relief, however, that should be granted? I can see nothing that the complainants are now entitled to other than a declaration that the amendment is void insofar as it attempts to wipe out the accumulations. The complainants seek more than this however. They seek an injunction against the payment of dividends on other classes of preferred stock until their accrued dividends are paid. This they are not entitled to for the reason that by the terms of the original certificate authorizing the preferred stock, whatever preference it has can be before dividends on common stock only. The corporation has neither declared nor set apart from earnings any sum for a dividend on the common stock, nor is it threatening to do so. The payment of dividends to the two preferred classes created by the amendment which come in ahead of the class which the complainants hold is not in violation of the rights secured to them by their contract with the corporation and the injunction should, therefore, not issue as prayed.

(c) It is further objected that the amendment is void as against the complainants because it changes the price at which

Morris, et al., *vs.* Amer. Pub. Utilities Co. 155

Opinion.

the company may redeem complainants' preferred stock. This objection is not well taken for the reason that the law under which the company was incorporated authorizes a change of this kind. Whether such a change may be said to be the alteration of a preference within the meaning of, and therefore authorized by, *Section* 26 I need not pause to consider, for *Section* 13, which authorizes the issuance of preferred stock supplies sufficient authority for the change here involved. That section provides that any or all classes of preferred stock may be made subject to redemption at such price not less than par "as may be expressed in the certificate of incorporation *or an amendment thereof.*" This statutory language is plainly sufficient to dispose of the present objection adversely to the complainants.

(d) Lastly, it is contended that the amendment is invalid because it deprives the preferred stock of the right to vote which it had theretofore enjoyed, and confers the right to vote exclusively upon the common stock. Formerly it was not permissible for the Legislature to deprive preferred stock of a Delaware corporation organized since the Constitution of 1897 of a right to vote at stockholders' meetings. *Brooks v. State ex rel. Richards*, 3 *Boyce*, 1, 79 *Atl.* 790, 51 *L. R. A. (N. S.)* 1126, *Ann. Cas.* 1915A, 1133. The constitutional provision upon which this ruling was based has been repealed since 1903. Since then it has been generally assumed by the bar that it is competent for the Legislature to authorize a corporation to deny to preferred stock a right to vote at stockholders' meetings, but that such right, unless expressly denied in the certificate of incorporation, is to be regarded as existing. This is the assumption accepted by the parties to this cause and is accordingly accepted by me for the purposes of this case. On this assumption the original preferred stock of the defendant did possess the right to vote, for the original certificate was silent regarding the right. Can it be taken away? I have no doubt that it may. I base this conclusion on the proposition that the right to vote is not such a change in property rights as to be exempt from the tampering effect of amendment where general power to amend is reserved. It is but an alteration which concerns the internal management of the corporation, and being such is not beyond the reach of an authorized general power to amend. *Looker*

*v. Maynard,* 179 *U. S.* 46, 21 *Sup. Ct.* 21, 45 *L. Ed.* 79; *C. H. Vanner Co. v. U. S. Steel Corp.,* (*C. C.*) 116 *Fed.* 1912.

Second. This is the head under which the complainants' right to an injunction against the payment of dividends on the two new classes of preferred stock is presented. Nothing need be said with respect to this beyond what has already been said in discussing the appropriate relief which may be given in connection with the subheading (b) under the first contention.

Let a decree be prepared accordingly.

NOTE.—An appeal taken by the defendant was later dismissed by the Supreme Court on application of the solicitor for the appellant.