Common Pleas Court of Cuyahoga County.

F. W. LOVELL V. UNITED MILK PRODUCTS CORP. ET AL.

Decided October 10, 1932.

*Tolles, Hogsett & Ginn,* for the plaintiff.
*Baker, Hostetler, Sidlo & Patterson,* for the defendants.

THOMAS M. KENNEDY, J.

In this case F. W. Lovell, a resident of this county and the owner of 100 shares of the preferred stock of the par value of $10,000 of the defendant corporation, instituted an action on behalf of himself and any other preferred stockholders who may elect to join in the relief sought against the United Milk Products Corporation, a corporation organized under the laws of the state of Delaware, and certain individual defendants, to-wit, Glen E. Bartshe, William A. Bartshe, Philip Haymes, Charles P. Lindahl, Sam W. Emerson and William Fox, who are officers and directors and who constitute a majority of the board of directors of the corporation. All the individual defendants, except William A. Bartshe who resides at Kent, Ohio, are residents of Cuyahoga county. According to the petition, the corporation has—

"Its principal office and place of business at 2000 West 14th street, in the city of Cleveland * * * where most of the business of said company is transacted and where meetings of the board of directors of said corporation are customarily held."

·To plaintiff's amended petition defendants filed a de-

murrer on two grounds: (1) that the court has no jurisdiction of the subject of the action, and (2) that the petition does not state facts to show a cause of action. These grounds require an examination of the case as made in the amended petition.

It is fundamental that on demurrer well pleaded facts of the petition are admitted. The allegations of the amended petition are to the effect that the plaintiff is a preferred stockholder; that the corporation was organized under the laws of Delaware, and is under domination and control of the individual defendants as officers, directors and holders of its common stock, it appearing that the individual defendants own and control approximately 70,-000, or about one-third, of the corporation's outstanding common stock and that defendants own less than 1500 shares of preferred stock. It is alleged that pursuant to a conspiracy among the defendants, entered into "prior to the 4th day of March, 1932," and "having for its object and plan the enhancement of the value of their respective common stock holdings at the expense of the holders of the preferred stock of the Corporation" the defendants proposed to reorganize the company by transferring all of its assets, except a cash item, to a new corporation to be formed, receiving in return certain preferred and common stock of the new corporation, and to dissolve and liquidate the present company and distribute its assets— consisting of cash and stock in the new corporation— such dissolution and liquidation to occur, however, after a change in the preferred stock contract of the present company, which change it is alleged modifies in a substantial way the existing rights of the preferred stockholder. The details of the plan are set forth in detail in the amended petition and show that so far as the present preferred stockholder is concerned he will be given on the closing of the transactions, for each share of his present 7 per cent. cumulative preferred stock having a par value of $100 and a value on liquidation of $100 per share plus accrued dividends and a redemption value of $110 a share plus accrued dividends, 4/5ths of a share of $3.00 cumulative preferred stock of the new company

having a liquidation value of $100 per share plus accrued dividends and a redemption value of $100 a share plus accrued dividends. It is alleged that the corporation is solvent and according to the exhibits attached to the petition the corporation now has net assets to the excess of $8,000,000, a capital surplus in excess of $500,000 and an earned surplus in excess of $500,000.

It is further alleged that the plan if carried out pursuant to the conspiracy aforementioned is of no benefit to the corporation and solely for the benefit of the common stockholders, who it is alleged will benefit to extent of the values taken away from the preferred stockholders, particularly by the amount of dividends now accrued, amounting to over $750,000.

In the brief of plaintiff and in oral argument the effect in dollars and cents of the plan on the value of the preferred stock of the corporation and particularly on the value of plaintiff's holdings is worked out. The correctness of this computation is not denied by defendants' counsel in their oral argument or brief, and generally the computation shows that based on the financial statements of the corporation attached to the petition there will occur, among other things, a loss to the preferred stock generally under the plan, in the matter of dividends now accrued of more than a half million dollars and this after a cash distribution of $3.00 a share. Further it is shown that in the event of liquidation of the new company the preferred stockholders would sustain a loss of $1,388,100, "e. g. the difference between 69,504 shares at $100 per share and 55,524 shares at $100 per share, the liquidation price of the new company's preferred." It is claimed in the petition that under these circumstances, whatever loss is sustained by the preferred stockholders will inure to the benefit of the common stockholders, including the defendants. In other words, that the common stockholders benefit to the extent that this and other values. are taken away from the preferred stockholder.

The petition also alleges that defendant directors have approved the plan and have called a meeting of stockhold-

ers for the consideration of this proposition. The meeting was originally scheduled for September, but is now by agreement postponed until October 13th; that the defendants are also a proxy committee, and that they have, by concealment and misrepresentation, secured assents from the stockholders, and will unless enjoined by the court vote their own stock and that for which they hold proxies in favor of the plan.

Plaintiff also alleges that the procedure whereby defendants seek to accomplish this result is illegal and unauthorized under Delaware law, and that the law of said state does not authorize and may not be validly construed to authorize a plan which takes away from a preferred stockholder his present rights including his right to dividends which have accrued on his stock.

Under these circumstances, the plaintiff asks equitable relief, including an injunction restraining the defendants from voting or causing to be voted any of the stock of the corporation in favor of the plaintiff; the officers from signing any certificate of amendment to the corporation's charter and in general from doing anything to complete the plan, and injunction is asked against Glen E. Bartshe and Philip L. Haymes from voting or causing to be voted any of the stock owned by them, which stock is said to be under attack in another case in this court.

In support of the first ground of the demurrer, that the court has no jurisdiction of the subject-matter of the action, it is argued that this case is an action to regulate the internal affairs of the corporation, organized under the laws of the state of Delaware, and that therefore the case is within the rule which it is claimed permits a court under such circumstances to decline the case and send the plaintiff to the courts of Delaware for relief. While it was clear that the jurisdiction of the persons of the defendants, including the corporation, is admitted it was not clear to me originally whether the court's jurisdiction of the subject of the action was conceded, but in the reply brief of defendants it seems to be admitted that the case is one within the general jurisdiction of the court and the argument is limited to the question of whether

the court should in the exercise of its discretion assume jurisdiction under these circumstances. It does not seem to me that defendants could have done otherwise for as pointed out by the plaintiff the court is a constitutional one and the legislature has confided to it general equitable jurisdiction. See Article IV, Sections 1 and 4 of the Ohio Constitution and Sections 11215 and 11237, General Code.

The point urged by defendants is an interesting one and the court has had the benefit of able and elaborate briefs and extended oral argument by counsel. It seems to me, however, that the case here is not within the rule cited by defendants. All of the defendants are in court, the defendant corporation while organized under the law of Delaware is located here. According to the petition it has its—

"principal office and place of business * * * in the city of Cleveland, where most of the business of said corporation is transacted and where meetings of the board of directors of said corporation are customarily held";

the defendants, who are its officers and according to the petition "constituted a majority of the seven members of the corporation's board of directors," reside here and are in court. The court is certainly able therefore to render a decree and enforce it.

Under these facts the rule to be applied is that cited by the plaintiff. This rule, supported by numerous cases, is stated in Thompson on Corporations, Vol. 8, Section 6698, as follows:

"The general rule that local courts will not interfere or control the management or the internal affairs of a corporation, is not without exception. But courts will interfere and control the management and internal affairs of a foreign corporation when it acquires jurisdiction over a foreign corporation, where such jurisdiction is complete and the court is able not only to hear and determine, but to enforce its decree in such a manner as to do complete justice to the parties."

The following decisions, to mention a few, are to this effect: *Williamson* v. *Pipe Line Co.*, 56 Fed. 2nd, 503;

*American Creosote Works* v. *Powell*, 298 Fed. 417; *State ex rel* v. *Farmer*, 7 O. C. C. 429; *State ex rel* v. *Richardson*, 30 Atl. 781; *Richardson* v. *Mfg. Co.*, 64 N. E. 400; *Corry* v. *Quarry Co.*, 101 Atl. 38; *Babcock* v. *Farwell*, 91 N. E. 683.

Our own Supreme Court in *Insurance Co.* v. *Douds*, 103 O. S. 398, seems to me to be generally in line with these authorities although this case did not exactly involve this particular point.

The cases cited by defendants do not conflict with this rule, but turn on different facts. *State ex rel* v. *Mining Co.*, 13 O. C. C. (N. S.) 100, was certainly not a case such as is here set out in the amended petition. The cases of *Wallace* v. *Motor Products Co.*, 15 Fed. 2nd, 211 and *Wallace* v. *Motor Products Co.*, 25 Fed. 2nd, 655, cited by defendants, support the idea that the courts have a discretion to assume or decline jurisdiction and the lower court's decision dismissing the case as to the individual defendants was reversed. As is pointed out by plaintiff, most if not all the decisions cited by able counsel for defendants were where the court did not have jurisdiction of all the parties, or jurisdiction of all of the subject-matter of the action, or under the facts could not enforce a decree.

As far as I can see the fact that the corporation here is a Delaware corporation is the only reason advanced why the case should be dismissed, and in this connection it is argued that the courts of Delaware are better able than Ohio courts to pass on questions of Delaware corporation law, and that their finding would be authoritative and that this company doing business in various states might be subject to conflicting decisions.

But in this case all the parties and the corporation are in court; the corporation's business is transacted here and the plaintiff, a resident of this county, alleges that the defendants are about to perpetrate a fraud upon him and are using their control of the corporation to accomplish that, and that the procedure being adopted is unauthorized and illegal. Under these facts, to adopt the defendants' contention would be for me to shut the door

of this court to a resident of this county and state and send him to Delaware to secure the relief to which he may be entitled. This result conflicts with my notions not only of justice but common sense, and I concur in the following statement, which seems to me to apply to the case at bar:

"Since compliance with a few administrative regulations will give any corporation the privilege of doing business in any state, it is not unnatural that the promoters of an American enterprise should choose as the place of incorporation that state whose laws are most favorable to their purposes. Thus arises the problem of the 'tramp' corporation, whose actual headquarters, and whose assets, stockholders, directors, and officers are foreign to the state of incorporation, and which, in consequence, is itself 'foreign' to those jurisdictions where it has its only physical manifestations. * * * Where all the parties are before the court, and the records and the property of the corporation, or those who control them, are within its jurisdiction, the mere fact that foreign law must be construed and applied should not be enough to persuade the court to decline jurisdiction. That equity did not interfere in the management of foreign corporations heretofore, when such bodies were exceptional, is not a conclusive reason for refusing relief today; though the exception may prove, it should not make, the rule. The danger of fraud is increased, and genuine hardship inflicted, when the stockholders are left to seek a remedy in a distant state where the corporation has but technical existence and the individuals concerned have neither domicile nor property. The considerations should be those of 'convenience or of efficiency,' and where no one essential to the litigation is absent, jurisdiction should not be avoided. The vague principle that courts will not interfere with the internal affairs of a corporation whose foreignness is at best a metaphysical concept, must fall before the practical necessities of the modern business world." 44 Harvard Law Review, 437.

Proof of the law of other states and jurisdictions may be made in Ohio courts, and I do not think that an Ohio court has any more trouble in ascertaining what the Supreme Court or the court of last resort in Delaware has decided in connection with its statutes than would a lower court of Delaware. For example, it is alleged as a fact

in the petition that the defendants' procedure is not authorized by Delaware laws and it is pointed out in argument and briefs that the court of Delaware has held its law does not authorize a course of procedure the effect of which is to take away from the stockholder a dividend which has at that time accrued. The case of *Morris* v. *Utilities Company,* 122 Atl. 696 is cited. It seems to me that it will be just as easy for an Ohio court as for a Delaware court to examine such decision or other decisions of the courts of Delaware to see whether or not the court so decided. The Federal courts, including the Supreme Court of the United States, in holding that the construction of a state law by a state court is binding upon them, apply this same principle.

The demurrer will be overruled on this ground.

Defendants also claim that the petition is fatally defective and therefore does not state a cause of action. As grounds for this defendants say (1) that the action is prematurely brought, and (2) that even if the fact is as alleged, that the misrepresentation and concealment by the defendants may have misled other stockholders, still that such misrepresentation and concealment not having misled the plaintiff the latter is in no position to complain.

The court has no difficulty in deciding that the allegations of the amended petition state a cause of action. It alleges facts showing a right of the plaintiff and under all circumstances a corresponding obligation to the plaintiff on the part of the defendants, who it is alleged occupy as officers and directors and common stockholders a fiduciary relationship to the plaintiff, and the truth of the allegations of the petition being admitted on demurrer, it surely appears that a right of the plaintiff has been and is being invaded by the defendants, to the damage of the plaintiff, and therefore if upon a hearing of the merits the claims of the plaintiff are substantiated the plaintiff would be entitled to relief.

The claim of the defendants that the action is prematurely brought is based upon the argument that "there is nothing to prevent the plaintiff from appearing at the stockholders' meeting and urging his views as to the un-

desirability of the proposed plan," but the allegations of the petition are to the effect that this whole proceeding is the result of a conspiracy by the defendants, who are in control of the company, and that "no one of the individual defendants will take any steps to prevent the passage or filing of the amendment" and that they "have repeatedly indicated their approval * * * and have urged preferred stockholders to assent" and that the defendants acting as proxies at the meeting "will unless enjoined hereby vote all of the assenting shares of common and preferred stock in favor of all matters necessary to consummate the said plan" and that any attempt by the plaintiff to block the passage of the plan "would be unavailing."

I do not see that the case cited by the defendants on this point affords any authority under the allegations of this petition.

In Vol. 13, Fletcher Ency. Corp. Sec. 5829, the rule is stated that—

"Minority stockholders ordinarily are entitled to relief against fraudulent, unfair or wrongful acts of the management of the corporation where prejudicial to their rights."

And it is also stated by the same author in Vol. 10, Sec. 4860, that

"Where the majority stockholders are oppressively and illegally pursuing a course of conduct in the name of the corporation which is in violation of the rights of the minority and which can only be restrained by the act of a court of equity the stockholder may sue in equity on behalf of himself and other stockholders for appropriate relief by injunction."

The next reason advanced is that the plaintiff has not been misled, and even if other stockholders have been misled the plaintiff cannot complain of that. But as I construe the amended petition, what the plaintiff is complaining of is not that he has been misled but that the defendants in control of the company have perpetrated a fraud upon his rights and their concealment and misrepresen-

tations to the stockholders is the means of carrying out the whole scheme. In other words, if plaintiff has been under the facts subjected to a wrong, to his damage, he would be entitled to a remedy outside of the question of misrepresentation and concealment by the defendants to other parties.

The demurrer will be overruled.