GEORGE PECK CAULKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket. No. 108422.  Promulgated February 25, 1943.

*Hugh W. Allin, Esq., Arthur T. Iverson, Esq.,* and *J. K. Starr, Esq.,* for the petitioner.

*Lawrence R. Bloomenthal, Esq.,* for the respondent.

658

#### OPINION.

MELLOTT, *Judge:* A single question is presented: Is the profit of $4,956.67 includible *in toto* in petitioner's taxable income, or did he correctly include but 50 percent? The answer depends upon whether the amount was ordinary income or capital gain. The applicable provisions of the Revenue Act of 1938 are shown in the margin.[1]

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or

Respondent attempts to support his determination by pointing out that the difference between the amount paid by petitioner and the amount received by him represented a price paid for the use of money. He therefore characterizes it as interest. In the alternative he contends that the gain, if not interest, represents income arising out of a transaction entered into for profit and in either event is taxable as ordinary income under section 22, *supra.*

As we view it the question can not be resolved by determining merely whether the gain is within section 22. Capital gains and losses are within this section; for they result from "dealings in property, whether real or personal." Subdivision (f) specifically provides that "in the case of a sale or other disposition of property, the gain shall be computed as provided in section 111." Congress, however, has removed capital gains and losses from the operation of the section by enacting section 117 of the various revenue acts. (Cf. sec. 117, Internal Revenue Code.) If in enacting or amending this section it has included within the category of capital gains or losses a gain such as the one realized by this petitioner, we have no alternative but to tax it accordingly.

Prior to the enactment of the Revenue Act of 1934, the payment of a bond by the corporation issuing it was held to be but the fulfillment of a contractual obligation to repay money in accordance with the fixed terms of the obligation and not a sale or exchange of a capital asset. *Fairbanks* v. *United States*, 306 U. S. 436; *Felin* v. *Kyle*, 102 Fed. (2d) 349; *John H. Watson, Jr.*, 27 B. T. A. 463; *Arthur E. Braun, Trustee*, 29 B. T. A. 1161; *Frank J. Cobbs*, 39 B. T. A. 642; petition to review dismissed, 111 Fed. (2d) 644. Section 117 (f), *supra*, appeared for the first time in the Revenue Act of 1934. In *McClain* v. *Commissioner*, 311 U. S. 527, the Supreme Court said: "It is plain that Congress intended by the new sub-section (f) to take out of the bad debt provision certain transactions and to place them in the category

---

business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1) ;

\*      \*      \*      \*      \*      \*      \*

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such gain is taken into account in computing net income;

\*      \*      \*      \*      \*      \*      \*

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 18 months;
66⅔ per centum if the capital asset has been held for more than 18 months but not for more than 24 months;
50 per centum if the capital asset has been held for more than 24 months.

\*      \*      \*      \*      \*      \*      \*

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

of capital gains and losses." This tribunal has held that by a parity of reasoning Congress also intended- to take out of the ordinary income provisions of the revenue act gains realized by a taxpayer in connection with the retirement of the specified obligations. *William H. Noll*, 43 B. T. A. 496.

Was the certificate purchased by petitioner a certificate or other evidence of indebtedness issued by a corporation in registered .form? Respondent at the hearing conceded that the certificate was in registered form "because it does have a definite number and a definite arrangement for assignment." Cf. *Gerard* v. *Helvering*, 120 Fed. (2d) .235, affirming *Mary D. Gerard*, 40 B. T. A. 64. His position both then and now is "that it is not a certificate, bond or debenture or other indebtedness under section 117 (f)." Petitioner answers this by pointing out that the Circuit Court of Appeals for the Eighth Circuit specifically held otherwise in a controversy between the Government and the company issuing the certificates when it held that the certificates were subject to the stamp tax prescribed by section 800, Schedule A (1), of the Revenue Act of 1926. *Willcuts* v. *Investors Syndicate*, 57 Fed. (2d) 811; certiorari denied, 287 U. S. 618. The act provided for the collection of a tax "on all bonds, debentures, or certificates of indebtedness issued by any corporation with interest coupons or in registered form, known generally as corporate securities." The following is an excerpt from the court's opinion:

The words "securities" and "certificates" and "corporate securities" were not technical, but were in common use at the time of the passage of the Revenue Act of 1926, and should be construed in accordance with their ordinary significance. A corporate security is simply a means adopted by the corporation to secure funds which it can employ in its business; and, by making a larger return on the funds so secured, it is enabled to pay its obligation under the corporate security issued, and also secure an income for itself.

The documents issued by the Investors' Syndicate in the case at bar have the earmarks of corporate securities. They are printed in the form of corporate securities, and on paper used generally for such securities. The purpose of the issue of the certificates was the same as the purpose ordinarily involved in issuing corporate securities; namely, to secure the money of others for use in the corporate business. The operations of the plaintiff in selling these certificates were subject to the scrutiny of the state authorities having supervision over the selling of corporate securities. *In re Investors' Syndicate*, 147 Minn. 217, 179 N. W. 1001. The certificates in question were issued in large numbers and in large amounts in the period in question, and were sold throughout the United States and foreign countries. Some $30,745,500 of such certificates were issued between January 1 and June 30, 1928; and the initial collections thereon were $458,424. It is true that, according to the terms of these certificates, they had no surrender or cash value so far as the Investors' Syndicate was concerned until eighteen months had elapsed after the issue; but it cannot be doubted that, from the very moment of issue, the certificates had an actual value based upon the amount that was paid as the initial installment. The time of maturity payment by the Investors' Syndicate is specifically fixed subject to the performance of the conditions named

in the certificate. The document is in form registered. It has a number assigned to it. This number is kept by the Investors' Syndicate to enable it to identify the particular certificate. The certificates are also assignable upon certain conditions. The syndicate undertakes to keep on hand first mortgages on improved real estate or other security to insure the payment of these certificates. A liability of the company from the moment of issue exists, and it is specifically stated as to amount after the certificate has been issued for eighteen months.

Since the similarity between the language of the two acts is so striking the decision in the cited case lends substantial support to petitioner's contention that the certificate owned by him was at the time of its retirement within section 117 (f). Conclusion to the effect that he reported his income correctly need not be based solely upon that case, however.

At the hearing reference was made to the fact that the contract between the syndicate and petitioner, as evidenced by the certificate, was not unlike that between the Government and purchasers of United States Savings Bonds issued under the Second Liberty Bond Act as amended by the Act of February 4, 1935. The increment in the value of each is in the nature of interest, the rate of increase being larger as the time of maturity approaches. The parties seem to agree that the increment in the value of the U. S. Savings Bonds would be taxable as a capital gain under 117 (f) were it not for the fact that Congress specifically provided that it "shall be considered as interest." (Ch. 5, sec. 6, 49 Stat. 21.) Respondent, upon brief, states that the provision was apparently included "for the express purpose of excluding from the capital gain provisions the increment on these bonds." That seems to be true, which suggests as a corollary that similar obligations are within the capital gains provision unless expressly excluded.

Respondent cites several cases in which conclusion was reached that the obligation there under consideration did not come within section 117 (f). Thus in *Norman Buckner*, 43 B. T. A. 958, it was held that certificates of proof of claim issued by a national bank receiver were not "certificates or other evidences of indebtedness." The section was therefore found to be inapplicable. In *Frank J. Cobbs, supra*, it was held that the term "evidence of indebtedness" excludes insurance and annuity contracts, being limited by the doctrine of *noscitur a sociis* to such things as bonds, debentures, notes, etc., which are specified in the context. Cf. *Helvering* v. *William Flaccus Oak Leather Co.*, 313 U. S. 247; *Bodine* v. *United States*, 103 Fed. (2d) 982; certiorari denied, 308 U. S. 576; *Avery* v. *Commissioner*, 111 Fed. (2d) 19. In *Mary D. Gerard, supra*, a bond secured by a mortgage given by a corporation to secure a loan from an individual was held not to come within the provisions of section 117 (f) since neither it nor the mortgage had interest coupons and since neither was "in registered

form." The cited cases, though correctly decided, do not support respondent's determination here; for the $20,000 was received by petitioner "upon the retirement of * * * [a] certificate * * * of indebtedness issued by * * * [a] corporation * * * in registered form."

We are of the opinion and hold that petitioner correctly reported his profit under section 117 (f), *supra*.

*Decision will be entered under Rule 50.*