M. W. ELLIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MINA W. ELLIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 111595, 111596.   Promulgated January 24, 1944.

*Leland W. Scott, Esq.,* for the petitioners.
*Edward C. Adams, Esq.,* for the respondent.

OPINION.

Van Fossan, *Judge*: The issue before us is whether the amounts received by the petitioners upon the surrender of their conditional rights certificates are to be treated for income tax purposes as ordinary income or as long term capital gains.

The petitioners contend that the amounts so received by them constitute a long term capital gain, and present several alternative arguments to support their contention. Their principal argument is that the conditional rights certificates were certificates of indebtedness of the company and that the amounts received upon their surrender were amounts received upon the retirement of "certificates or other evidences of indebtedness issued by any corporation * * * in registered form," within the meaning of section 117 (f) of the Internal Revenue Code.[1]

It is noted at the outset that the certificates stated that they were not to represent a debt of, or claim against, the corporation unless and

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

        *           *           *           *           *           *

    (f) Retirement of Bonds, Etc.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidence of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

until the board of directors should declare a dividend on the common stock and that the board should in no way be obligated at any time to declare a dividend on the common stock. The petitioners assert, however, that these conditional rights certificates nevertheless represented a debt of the company because, under Delaware law, the right to accumulated dividends is a property right in the nature of a debt. They cite *Keller* v. *Wilson & Co.*, 190 Atl. 115; *Consolidated Film Industries, Inc.* v. *Johnson*, 197 Atl. 489; and *Shanik* v. *White Sewing Machine Corporation*, 19 Atl. (2d) 831.

We do not understand the law of Delaware to go so far. The cases cited by the petitioners are generally to the effect that once dividends have accumulated on preferred stock the preferred stockholders have a right to have these dividends paid before any dividend is declared on the common stock and that this right can not be taken away by charter amendment or otherwise, without the consent of the stockholder. So far as the dividends are concerned, we do not construe these cases as giving to the preferred stockholder anything more than a right to accumulated and unpaid dividends on his stock, payable when and if a dividend is declared on the common stock.

It is evident from the terms of the conditional rights certificates, and from the letter of the president of the company which accompanied them, that the company did not intend to create an indebtedness and attempted to conform to this rule. This right to a preference at some future and indefinite date does not give rise to a debt of the company or a right of the stockholders which can be enforced at law prior to the declaration of a dividend. The Delaware courts have held that this rule does not prevent a corporation from making changes in its capital structure which will reduce the probability of actual payment of the dividends, *Shanik* v. *White Sewing Machine Corporation*, 15 Atl. (2d) 169; affd., 19 Atl. (2d) 831, and that a stockholder is not a creditor of the corporation in the sense that he may sue at law for dividends in arrears. *Morris* v. *American Public Utilities Co.*, 122 Atl. 696.

The conditional rights certificates were a formal acknowledgment or recognition of the right of the holders of the convertible participating stock to receive the accumulated dividends on their stock before the common stockholders should receive any dividend, but they were based upon no new consideration and created no new right. They merely evidenced the continuation of a right of these stockholders which they already possessed as such stockholders and which would have continued to exist had the conditional rights certificates never been issued.

The right of a stockholder to an undeclared dividend is not an enforceable right, nor does it create any indebtedness on the part of a corporation. It is the declaration of the dividend which creates both the dividend itself and the right of the stockholders to demand

and receive it. Fletcher, Cyclopedia of the Law of Private Corporations (Permanent Edition), vol. 2, sec. 5321; *Morris* v. *American Public Utilities Co., supra.* Consequently the conditional rights certificates were not "certificates of indebtedness" of the company and section 117 (f) has no application.

The case of *George Peck Caulkins*, 1 T. C. 656, on appeal to the Circuit Court of Appeals for the Sixth Circuit, cited by the petitioners in support of their argument, involved facts so substantially different from those before us that it is of no value here as a precedent.

The petitioners' second argument may be summarized as follows: Assuming that the conditional rights certificates were not certificates of indebtedness at the time they were issued, the resolution of November 28, 1940, whereby the board of directors elected to pay the certificates, had the effect of converting them into certificates of indebtedness, i. e., of converting conditional obligations of the company into unconditional obligations. This conversion, the petitioners argue, constituted a "constructive exchange" of one form of security into another form of security in pursuance of a plan of reorganization, within the provisions of section 112 (b) (3) of the Internal Revenue Code. It is said that after this "constructive exchange" the conditional rights certificates were "certificates of indebtedness * * * in registered form," and the amounts received on their retirement are to be considered amounts received in exchange therefor under section 117 (f). The petitioners conclude that, following the terms of section 113 (a) (6), the basis of the "unconditional obligations" is the same as that of the "conditional obligations" and thus under the provisions of section 117 (h) (1), in determining the period for which the unconditional obligations were held, there is to be included the period for which the conditional obligations were held, giving rise to the receipt by each petitioner of a long term capital gain.

We need discuss but one phase of this argument, since it will dispose of the petitioners' entire theory. The petitioners assert that the resolution of November 28, 1940, effected a recapitalization, thus bringing the transaction within the purview of section 112 (b) (3). This position is untenable. The conditional rights certificates formed no part of the capital structure of the company. *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194. They were not capital stock, since they possessed none of the ordinary characteristics of capital stock and the certificates themselves stated that the owners should not be entitled to any of the rights of a stockholder. They were not a part of the long term funded debt of the company since, at least prior to November 28, 1940, they did not constitute a debt of the company. Further, there was no sale or exchange of securities or capital assets effected by the resolution of November 28, 1940. The resolution merely recited that the corporation elected to pay the certificates, and

we see no reason for ascribing to the board of directors an intent different from the one fully and plainly set out in the language of the resolution.

The petitioners further contend that the amounts received by them can not be considered dividends, as held by respondent, because section 115 (a)[2] defines a dividend as "any distribution made by a corporation to its shareholders"; that the stock on which the dividends had accumulated had been retired so that the conditional rights certificates and the right to receive the amount thereon existed independently of any issue of stock; that since the certificates were transferable it was not necessary to be a stockholder in order to receive payment on them but only to be a registered owner of one or more certificates; and, finally, that the certificates stated that the holders thereof were not to be entitled to any of the rights of a stockholder. Consequently, petitioners argue, payment of the conditional rights certificates was not a distribution by the corporation to its shareholders and thus not a dividend within the meaning of section 115 (a).

The question before us is broader than the definition of the amounts received. It matters not that the Commissioner labeled the payments "dividends." Our question is: Were the payments taxable as ordinary income? Addressing ourselves to the stated argument, however, we are of the opinion that the payments were dividends within the statutory definition. (See footnote 2.)

The petitioners apparently also overlook the fact that the conditional rights certificates were issued only to the holders of the convertible participating stock as evidence of their right to receive the dividends which had accumulated on their stock before a dividend could be received by the common stockholders. Had the dividends been paid in cash at the time of the recapitalization of the company in 1931, there would have been no doubt as to their character as dividends. Their character was not changed because payment was deferred until the company was in a better financial condition.

The conclusion seems to us inescapable that the amounts received by the petitioners were taxable in their entirety as ordinary income.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

MURDOCK and SMITH, *JJ.*, dissent.

---

BLACK, *J.*, concurring: I concur in the result reached in the majority opinion. I agree that the certificates in question were not "certificates or other evidences of indebtedness" within the meaning of section 117

---

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913 * * *.

(f), I. R. C., when issued by the Oliver Farm Implement Co. The language in the certificates themselves which reads: "This certificate does not represent a debt of or claim against the company, *unless and until* it shall declare and set aside a dividend upon its common stock" (italics supplied), prevents them from being classed as certificates of indebtedness at the time issued. However, when the corporation on November 28, 1940, passed a resolution to pay in full all of these outstanding "conditional rights certificates" on December 2, 1940, such certificates became to all intents and purposes certificates of indebtedness from that time on. But, as such, petitioners held them for only four days.

In order for the taxpayers to have their gains taxed as long term capital gains under the provisions of section 117, I. R. C., they must have held these "certificates of indebtedness" for a period of more than 18 months. It is true the petitioners had held the "conditional rights certificates" for a much longer period than 18 months but during all that period, up to November 28, 1940, they did not represent "certificates or other evidences of indebtedness issued by the corporation," within the meaning of section 117 (f).

Therefore, I do not think that the period prior to November 30, 1940, can be counted in the period of holding required by section 117 (a) (4). For this reason I do not think petitioners can avail themselves of the provisions of section 117 (f) which would otherwise have been available to them if their "conditional rights certificates" had been certificates of indebtedness from the outset.

LEECH, DISNEY, and KERN, *JJ.*, agree with the above.