EDITH K. TIMKEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6648.   Promulgated March 14, 1946.

*John G. Ketterer, Esq.*, for the petitioner.
*Thos. F. Callahan, Esq.*, for the respondent.

### OPINION.

DISNEY, *Judge*: This case involves income taxes for the calendar years 1940 and 1941, for which years, respectively, the Commissioner determined deficiencies of $1,102.88 and $5,102.86. Two questions are presented: (1) Whether, for 1940, the petitioner, transferee of certain corporate assets in liquidation, under agreement by her to pay any corporate debts, is entitled to deduct interest paid by her on a deficiency later assessed against the corporation, as to the period after transfer of corporate assets to her; and, (2) whether certain of the petitioner's income, in 1941, was ordinary income or capital gain.

The facts have all been stipulated. We adopt the stipulation as our findings of fact. We will set forth here only such matters as examination of the issues requires.

### The Question of Deduction of Interest.

The petitioner filed her income tax return for the taxable years with the collector for the eighteenth district of Ohio. She and her husband were the only stockholders of a corporation. They caused it to be liquidated and all assets distributed to them in proportion to their stock holdings, they agreeing in writing with the corporation as a part of the plan of liquidation to pay all corporate debts and obligations. (Though petitioner's pro rata part of the assets was in fact distributed to a trust set up by her, the trust was revocable by petitioner, and she was sole beneficiary. For that reason, apparently,

the parties have treated the matter as one involving a transfer to the petitioner and for that reason we too so treat it.) After such transfer of the assets to the petitioner, a deficit in income taxes was assessed against the corporation. The deficiency was thereupon paid, including interest, of which the petitioner's portion for the period after liquidation of the corporation was $1,897.54. Deduction of such interest from petitioner's income was disallowed, presenting the question here in issue.

The petitioner argues that the interest is deductible under *Koppers Co.*, 3 T. C. 62; affd., 151 Fed. (2d) 267, sub nom. *Commissioner* v. *Breyer.* The respondent contends that deduction of the interest is not permissible, under *Koch* v. *United States*, 138 Fed. (2d) 850; *Nunan* v. *Green*, 146 Fed. (2d) 352, reversing 3 T. C. 74; *Commissioner* v. *Henderson*, 147 Fed. (2d) 619; and *Commissioner* v. *Green*, 148 Fed. (2d) 157.

The *Koppers* case is parallel in its facts to the instant matter. We adhered to the views expressed therein in *Robert L. Smith*, 6 T. C. 255. We hold that the respondent erred in disallowing the deduction of the interest paid.

### *The Question of Whether Income Was Ordinary or Capital Gain.*

In the year 1941 the petitioner had certain income from payments made upon notes issued by a corporation in connection with the liquidation of a banking corporation, and we are to decide the question as to whether the amounts received are ordinary income, taxable in full, or are taxable as capital gain, subject to the limitations of section 117 of the Internal Revenue Code. Our conclusion must, therefore, it is clear, depend upon the facts involved. In brief, those facts so stipulated are so far as considered pertinent: When on June 15, 1933, the Union Trust Co. of Cleveland, Ohio, was taken over for liquidation by the Superintendent of Banks of that state, petitioner had on deposit therein $269,976.46, for which amount she received a certificate of claim. In 1933 and 1934 liquidating dividends totaling 45 percent were paid on such claims to depositors and petitioner received $121,-489.41 on her claim. In her Federal income tax return for 1934 the petitioner claimed and was allowed a deduction, for partial bad debt, $51,295.53 as 19 percent of the face amount of her claim. In 1938 the bank was reorganized, and on January 6, 1938, petitioner delivered to the Superintendent of Banks, in accordance with the plan of reorganization, a consent and agreement, thereby electing and agreeing to accept in "final settlement and discharge" of her rights as holder of a certificate of claim, a payment of 35 percent of the face amount of her claim, and a "creditors note" of Union Properties, Inc., for the

20 percent remaining unpaid on her claim. She received payment of 35 percent, being $94,491.76 and a creditors note in the face amount of $53,995.29. Union Properties, Inc., was a corporation all the stock of which was owned by Union Bank of Commerce Co., the new bank resulting from the reorganization of Union Trust Co. Union Properties, Inc., under the plan, issued approximately $21,000,000 in creditors notes, and they have ever since that time been bought and sold by brokerage houses in Cleveland. In 1938 the Bureau of Internal Revenue issued a ruling to the effect that depositors who had been allowed deduction for partial bad debt for 1933 and 1934 realized taxable income for 1938 as recovery of bad debt, measured by the excess of the sum of cash distributions plus market value of the note over the original deposit less the deduction previously allowed as bad debt. The revenue agent in charge at Cleveland advised in August 1938 that, for the purpose of computing gain or loss upon recoveries, the creditors notes had a value of $38.50 per $100 face value on May 16, 1938, the date of their issuance. At that rate petitioner's creditors note had a fair market value of $20,788.19, and for the purpose of this case $20,788.19 is adopted by the parties as petitioner's basis in her creditors note above described. Considering the amounts of cash received and the creditors note at a value of $20,788.19, petitioner in 1938 recovered $18,088.43 of the partial bad debt deduction of $51,295.53 allowed in 1934. In November 1938 petitioner purchased a creditors note of a face value of $3,176.60, at a cost of $1,493. Since that date Union Properties, Inc., has made four 25 percent payments on such creditors notes, in December 1939, June 1941, December 1942, and March 1943. Accordingly petitioner received, and applied in reduction of the bases on the two creditors notes, in each of the years 1939 and 1941, the sums of $13,498.82 (on the larger note) and $794.15 (on the smaller), resulting, prior to the payments in 1941, in the reduction of petitioner's bases in the two notes to $7,289.37 and $698.85, respectively, and therefore resulting in gain to the petitioner, upon receipt of the payments in 1941, of $6,209.45 and $95.30 on the respective notes. Petitioner sold both notes in 1942. In her income tax return for 1941 she included 50 percent of such amounts of gain as taxable as long term capital gain. The Commissioner determined that the amounts were not long term capital gain, but taxable income under section 22 (a), Internal Revenue Code.

The creditors notes (payable in 5 years extendible to 8 years by notice to holders of record) provided for payment of the face amount thereof, without interest; but under the plan of reorganization the holders had a right of participation proportionately in one-half of the net proceeds of the net assets of Union Properties, Inc. These assets had been a part of the assets of the former bank, and included, as

secondary security for the payment of the creditors notes, the major portion of the stock of the new bank.

Notice of payments to be made on the notes was required to be given to the holders of record at their addresses as shown on the books of Union Properties, Inc., and such payments were to be endorsed on the notes, and, to the extent of such payments, the notes were to be considered paid or satisfied. The notes were numbered serially, and on the reverse side of each was a space to record payments and a form of assignment, including appointment of a person or attorney to transfer the note on the books of Union Properties, Inc. The notes had no interest coupons.

A committee had been appointed to represent the noteholders and was to continue until face amount of notes and participating rights were paid or satisfied. The noteholders' committee, by majority vote, could agree with the debtor corporation upon segregation of the assets to be participated in, or their value, and such agreement would bind the noteholders. The notes were to be surrendered for cancellation when fully satisfied and discharged by payment and participation in the assets. The debtor corporation had the right at any time to purchase, at not more than par, "and cancel and retire" any or all of the creditors notes, providing it used not more than half of its assets above a reserve for other liabilities. A 10 percent payment on the notes was required when a certain amount of cash was on hand.

Under such facts, was the petitioner entitled to report her income as capital gain? The petitioner argues that there was retirement of notes in registered form under section 117 (f) of the Internal Revenue Code.[1] The respondent contends that there was neither registered form of note nor retirement. He also suggests, in effect, that the larger of the two creditors notes (received by her because of her deposit in the bank) was not obtained by purchase, so that she in fact merely continued, in the taxable year, to collect on the balance due her on her original deposit. In this latter view we think the respondent is in error. The petitioner had exchanged her rights as depositor in the bank for rights against a different corporation, under the creditors note, and "in final settlement and discharge" of her rights as holder of a certificate of claim. She thereby acquired, for consideration, an asset. The parties stipulate that her basis in the note is $20,788.19. We may not, therefore, deny the petitioner's view because of any idea that she has no capital asset.

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

 *      *      *      *      *      *      *

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

After much study of this question and the cases cited, and others, we are of the opinion, first, that the notes held by petitioner were in registered form.

Since there were provisions for notice to the noteholders of record, it is plain that there was a record, or registry, of the noteholders. The notes were numbered serially, which of itself to some extent indicates registration, as does the fact that each note bore a form for appointment of attorney to transfer on the books of the corporation. We think it can not logically be denied that the notes were "in registered form," in much, though not exactly in, the same manner as the securities which were held in *Rieger* v. *Commissioner*, 139 Fed. (2d) 618, to comply with the statute. In that case serially numbered certificates of claim against an insolvent bank required endorsement of assignment, acceptance thereof by the liquidating agent, and notice of assignment to the Superintendent of Banks. In *George Peck Caulkins*, 1 T. C. 656 (661), on this question, we noted that the respondent had conceded that a certificate was in registered form "because it does have a definite number and a definite arrangement for assignment."

Were the amounts received by petitioner in the taxable year received "upon the retirement" of the notes? The respondent points out that they were in effect after 1941, and calls attention to *Mary D. Gerard*, 40 B. T. A. 64, wherein on this issue we noted that the bond and mortgage there were still in effect in a later year; but that statement was unnecessary to the conclusion, which was based upon the fact of lack of either registered form or interest coupon, and particularly because such bond and mortgage were considered not to be included in the statutory expression "bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation." Respondent cites also a phrase in *Norman Buckner*, 43 B. T. A. 958, which taken alone is offered as a holding that payments "obviously did not 'retire' the obligation since further dividends were payable after the taxable year," whereas examination of the whole sentence reveals that we particularly refrained from deciding whether the payments involved constituted retirements under section 117 (f). The "Plan" here provided that payments placed in bank with notice to record noteholders should cause the notes, "to the extent of such payment," to be considered "paid or satisfied." The respondent's view that the payments here were not retirement means in effect that only the final payment on the notes, or a single payment of the full amount, can constitute retirement. We do not subscribe to such idea. Each payment upon the note *pro tanto* retired it. We see nothing in the statute to justify a contrary conclusion. In *McClain* v. *Commissioner*, 311 U. S. 527, the taxpayer received payment for a bond of a water district not in the usual manner by redemption, but in amount less than face value, because the payor

was in financial straits, and the payee was willing to accept the lesser figure. The Court nevertheless, stating that the term "retirement" is broader in scope than "redemption" and includes that term, held that the loss taken was capital, under section 117 (f). We should consider the expression as used in the same broad sense here. We considered this point in *William H. Noll*, 43 B. T. A. 496, where the petitioner had held Joint Stock Land Bank bonds, but upon receivers being appointed for the banks had delivered the bonds and received "Receiver's Certificates of Delivery of Coupon Joint Stock Farm Loan Bonds and Proof of Claim." The certificates stated, *inter alia*, that "the Receiver may require that this certificate be surrendered at the time of payment of the final dividend * * *." During the taxable years the petitioner received certain payments and as in the instant case the respondent argued:

* * * "Where, as here, petitioner merely received payments on account of his obligations with the balance still remaining due and owing, the bonds being in public circulation, available for public assignment and transfer and petitioner retaining all rights thereunder, no retirement occurred." * * *

Commenting that it was obvious that the receivers were retiring the bonds as rapidly as possible, we said: "In 'common speech' the bonds were partially retired. The statute (sec. 117 (f), *supra,*) does not require that the bonds be wholly retired," and we held that the gains realized were to be taxed as capital gains. That the noteholder, in the instant case, had rights of participation in certain segregated assets is not material. The payments contributed in any event to the retirement of the obligation evidenced by the notes. We hold that the amounts here involved were received by the petitioner upon the retirement of the notes, therefore to be "considered as amounts received in exchange therefor."

Because of other items entering into the deficiency, not assigned as error, decision will be entered under Rule 50.

Reviewed by the Court.

*Decision will be entered under Rule 50.*