Carl Oestreicher, Sole Surviving Trustee of Trust Under the Will of Isaac Oestreicher, Deceased, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 36856. Promulgated April 6, 1953.

*Albert R. Dworkin, Esq.*, for the petitioner.
*William G. O'Neill, Esq.*, for the respondent.

#### OPINION.

Raum, *Judge:* The petitioner filed a claim for refund of $536.25 of income taxes paid for the year 1945. The respondent determined that there was a deficiency in income taxes in the amount of $605.56 for that year. The only issue presented is whether an amount received by the petitioner, in partial retirement of a corporate obligation, was ordinary income or long-term capital gain pursuant to section 117 (f) of the Internal Revenue Code.[1]

The facts have been stipulated and are so found. The petitioner is the sole surviving trustee of the trust under the will of Isaac Oestreicher, deceased. He filed the fiduciary income tax return for the calendar year 1945 with the collector of internal revenue for the third district of New York.

In 1927, the 36th Street and 8th Avenue Corporation (hereinafter referred to as the "corporation") issued to Carl, Isaac, and Moritz Oestreicher a bond in the amount of $800,000, secured by a second mortgage on certain realty, payable on March 1, 1932. In April 1930, the payment date for the bond, which then had a principal balance of $680,000, was extended until March 1, 1940, and in April 1939, it was further extended until March 1, 1945. At the time of the 1939 extension the rights in the bond to the then remaining balance of $580,000 were owned by the following persons in the amounts shown:

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(f) Retirement of Bonds, Etc.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

| | |
|---|---|
| Carl Oestreicher | $131,406.25 |
| Moritz Oestreicher | 131,406.25 |
| William Oestreicher | 131,406.25 |
| Estate of Isaac Oestreicher | 81,562.50 |
| Estate of Oscar Oestreicher | 82,468.75 |
| Max Heil | 21,750.00 |
| | $580,000.00 |

On January 3, 1945, $160,000 remained unpaid. The corporation issued to each of the holders of participating interests in the bond a note due on December 1, 1950. Each of the notes was identical except for the name of the payee and the amount. The note given to the petitioner was for $22,500.17. It referred to itself as "one of a series of registered notes" and was issued "in place of all prior papers, documents and instruments issued to the payee * * * for his interest in the second mortgage * * * ." The note was transferable only on the books of the corporation at its office by the registered holder or his authorized attorney upon the surrender of the note properly indorsed. It provided further that it was necessary to present the note "for endorsement of payments of principal thereon simultaneously with such payments." The note was signed by Carl Oestreicher, as president, and Moritz Oestreicher, as treasurer of the corporation.

The directors of the corporation were Carl, Moritz, and William Oestreicher. The stock of the corporation consisted solely of common stock which was owned by Max Heil (75 shares) and Clemons, Inc. (925 shares). Clemons, Inc., is a Delaware corporation whose capital stock at January 3, 1945, consisted of 4,100 shares of common stock owned equally by Carl, William, and Moritz Oestreicher and the estates of Oscar and Isaac Oestreicher. Carl, William, Moritz, the deceased Isaac, and the deceased Oscar Oestreicher were all brothers. Carl and William were the trustees of the Isaac Oestreicher trust along with Isaac's widow and the trustees of the Oscar Oestreicher trust with Oscar's widow. Max Heil was not related to any of the Oestreichers.

In 1945, the petitioner received $7,031.50 as a reduction of the principal amount payable under the note. Prior to January 1, 1945, the petitioner had recovered, through payments, the basis for determining gain or loss on the note so that the amount received in 1945 was taxable gain. He asserts that the instruments meet the requirements of section 117 (f) of the Code since they are in registered form and that therefore the amount received in 1945 was taxable as capital gain rather than ordinary income. The respondent contends that the

instruments were not in registered form and therefore the amounts received in 1945 were ordinary income.

The principal argument of the respondent in support of his contention that the notes were not in registered form is that a formal register was not kept by the corporation. The corporation maintained books of account in which the payments made on the notes were recorded, but these records appeared to be rather informally kept. The note, though, provided that it was registered, that it was transferable only on the books of the corporation by the registered owner, and that the note had to be presented for endorsement of payments of principal thereon. We think that these provisions in the notes were sufficient to establish that the notes were in registered form. In *Gerard* v. *Helvering*, 120 F. 2d 235, 236 (C. A. 2), a case relied upon by the respondent, the court in holding for the Commissioner said that "The purpose [of having a bond in registered form] is to protect the holder by making invalid unregistered transfers, and the bond always so provides on its face." The bond in that case contained no such provision and the taxpayer was attempting to establish that the obligation was in registered form because the corporation kept books of account upon which the debt appeared. The note in the case at bar did provide that it was registered and that it could only be transferred on the books of the corporation. The purpose of registration was therefore attained. See also *Rieger* v. *Commissioner*, 139 F. 2d 618, 621 (C. A. 6); *George Peck Caulkins*, 1 T. C. 656, 661; *Edith K. Timken*, 6 T. C. 483.

The respondent further asserts that the corporation did not believe that it was issuing notes in registered form since it did not affix the revenue stamps required by sections 1800 and 1801 of the Code. We are not concerned here, however, with the failure of the corporation to comply with those sections of the Code. And we think that the intention of the corporation to issue registered notes, as manifested by the clear language of the note, is not nullified by its failure to comply with the stamp tax provisions. We conclude, therefore, that the note issued by the corporation was in registered form.

The respondent alternatively contends that even if the note was in registered form and the technical requirements of section 117 (f) have been met, in substance the amount received was in retirement of the original bond which was not in registered form. It has been decided that it is not the form in which the obligation was originally issued but the form at the time the retirement takes place which determines whether section 117 (f) is applicable. *Lurie* v. *Commissioner*, 156 F. 2d 436 (C. A. 9). The respondent asserts that the issuing of the notes in place of the bond was a tax-motivated plan

to convert ordinary income into capital gain. He argues that because of the family relationship of all but one of the persons involved and because of the fact that the debtor corporation was owned by the obligees of the bonds, we should disregard the form which the transaction took and look to the substance. He contends that the corporation was financially able to retire the bonds in 1945 and that no purpose other than tax avoidance has been shown for the substitution of the notes in registered form for the unregistered bonds. We cannot agree with those arguments. To be sure, the corporation on December 31, 1944, had a large surplus. The amount of current assets available though was plainly insufficient to cover the cost of retirement of the obligations which were shortly payable. The corporation's assets consisted largely of real estate holdings and it does not seem unreasonable to assume that sound business judgment would have required some such plan to eliminate the impending need for a large amount of cash in order to retire the bonds. That a plan which would minimize the tax liabilities of the obligees was chosen cannot of itself operate to deny the benefits clearly authorized by the Code. This is not a case like *Gregory* v. *Helvering*, 293 U. S. 465, where the statutory reorganization provisions involved contemplated that there be a genuine reorganization regardless of the form adopted; here, there was compliance with the statute if the obligations were in fact "in registered form," and we have determined that they were.

We hold, therefore, that the provisions of section 117 (f) are applicable here and that the petitioner is entitled to capital gains treatment of the $7,031.50 which he received in 1945.

*Decision will be entered under Rule 50.*