**Victor A. MILLER and Beatrice A. Miller, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 6323.

United States Court of Appeals Tenth Circuit.

Nov. 16, 1960.

Victor A Miller, Denver, Colo. (Horace N. Hawkins, Jr., Denver, Colo., was with him on the brief), for petitioners.

Harold M. Seidel, Dept. of Justice, Washington, D. C. (Howard A. Heffron, Acting Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Dept. of Justice, Washington, D. C., were with him on the brief), for respondent.

Before PHILLIPS, LEWIS and BREITENSTEIN, Circuit Judges.

LEWIS, Circuit Judge.

Petition to review a decision of the Tax Court under 26 U.S.C.A. § 7482.

An audit of the individual income tax return of petitioners, husband and wife filing jointly, for the years 1953 and 1954 resulted in deficiency assessments by the Commissioner of $426.04 and $1,294.86 because of the allocation of certain income and deductions between the taxpayer and the A. S. Miller Estate Partnership, which taxpayer managed.

The original partnership was formed upon the death of A. S. Miller, the father of petitioner Victor A. Miller, for the purpose of managing securities left by him for the benefit of his widow and four children. In 1943, the widow, Emma Miller, died, leaving the family home at 851 Clarkson Street in Denver, Colorado, to a daughter by a former marriage. During her lifetime she had provided trusts for the life benefit of her children by her marriage to A. S. Miller.

Since the half-sister was anxious to dispose of the property inherited from her mother, the two brothers and one of the sisters agreed to purchase it for $11,000, with the intention of holding it for investment purposes.

By reason of subsequent partnership distributions and agreements, the A. S. Miller Estate Partnership in its original constituency was dissolved in 1946 and a new partnership carrying the same name was formed by the taxpayer and one of his sisters, Marcella M. duPont, and the trusts created by their mother. The Emma Miller "B" Trust created a life interest in Victor A. Miller and the Emma Miller "C" Trust made Marcella M. duPont the life beneficiary; Victor Miller was trustee of both trusts. Thus, the partnership interests from 1946 until May 29, 1951 were as follows:

Victor A. Miller.................42%
Emma Miller "B" Trust..........22%
Emma Miller "C" Trust..........22%
Marcella M. duPont..............14%

As of that date, assets of the partnership and their adjusted bases for tax purposes were stipulated to be as follows:

Cash ......................$74,750
851 Clarkson St. .............. 6,300
Bonnie Notes ................ 13,500
Toltec Stock ................. 14,800
Toltec Bonds ................ 9,200
Miller-duPont, Inc., Stock ...... 7,000
Primrose Refunding Bonds .... 5,100
Cooper Purchase Bonds ........ 12,000
Darlington Stock .............. 9,000
Darlington Bonds ............ 11,300

The transactions which gave rise to the disagreements between the taxpayer and the Commissioner occurred on May 29, 1951, and a short time subsequent to that date. The partnership bought from Marcella her individual interest in the notes and securities of the partnership, reserving particularly her rights in the realty located at 851 Clarkson Street, for a payment of $70,000. Notes and securities were distributed to the "B" and "C" Trusts to the extent of their interests as partners in the securities, but no disposition was made of their interests at 851 Clarkson Street.

Thus the partnership interest of the taxpayer, Victor A. Miller, during 1953 and 1954 was apparently considered by the Tax Court as all the undistributed stocks, bonds, notes, and cash and his interest in the Clarkson Street property. This property, showing record title in A. S. Miller Estate Partnership, was not productive of income at any time under inquiry and, in order to preserve the property, the taxpayer moved his family into the dwelling and has since occupied it as a private residence. Taxpayer now estimates that the property has a value of $50,000 as a prospective site for an apartment house, but no arrangements were made to dispose of it during the years under examination.

When real estate taxes were assessed against the real property, taxpayer as the managing partner paid the taxes with a check drawn upon the A. S. Miller Estate Partnership checking account, but containing only funds properly distributable to him alone. Thus, for the taxable years 1953 and 1954, partnership income tax returns filed in the name of "A. S. Miller Estate (Liquidating)" reflected as deductions the payment of real estate taxes in the amounts of $452.32 and $449.85. Petitioner's individual return reported the income then left in the partnership accounts as his distributive share and claimed the standard deduction.

The Commissioner asserted that there was in fact no partnership entity, alleging dissolution in 1951, and that the taxpayer was in effect claiming the real

estate tax deduction twice, first in the determination of his income from the partnership and secondly in the computation of his individual taxable income through the use of the standard deduction. The taxpayer attempted to show the continuing existence of the partnership and the continuing, though somewhat nebulous interest of the three other partners in the income-producing securities as well as the real estate.

This issue as joined drew into question not only the right of the partnership to claim a deduction for the real estate taxes paid, but also questions as to the effect upon the partnership or individual basis of the cash payment of $70,000 to Marcella duPont[1] and further as to the correct basis to be applied to two notes which matured during the taxable period and were paid to the A. S. Miller Estate Partnership, i. e. the Primrose Refunding Notes and the Cooper Purchase Notes.[2] In view of our conclusion that the issue as framed by the pleadings was not determined by the Tax Court and is essential to a proper tax accounting, the case must be remanded to that court for findings and opinion and the subsidiary and alternative questions of law are not yet ripe for review.

The Tax Court set forth the dispute between the parties cogently:

"Petitioner maintains that '851' was owned in the years in question (a) by A. S. Miller Estate Partnership (admittedly a partnership at least until May 29, 1951); or, in the alternative, (b) if dissolved on or about May 29, 1951, by the same partnership in liquidation, since it was not terminated at least until after 1954; or (c) by a new partnership or joint venture of the same partners having its inception on or about May 29, 1951 and continuing at least until after 1954.

"Respondent maintains that A. S. Miller Estate Partnership was both dissolved and terminated on or about May 29, 1951, or at least prior to 1953, and that '851' was thereafter owned by the former partners as tenants in common."

but begged the question:

"We take the view that the partnership owned '851' during the years in question, but we find it unneces-

---

1. It is the petitioner's view that the transaction with his sister increased the cost bases of the partnership securities by the amount of $70,000 paid to her. The Tax Court held that the duPont transaction was merely a rearrangement of the interests of the partners and that the partnership engaged in no transaction affecting it as a computing unit and upheld the Commissioner in the disallowance of the "stepped-up basis" and charged the taxpayer individually for taxes due upon the excess of original basis in accordance with Section 113 of the Internal Revenue Code of 1939, 26 U.S.C.A. and Treasury Regulations 118, sec. 39.113(a) (13) (2); 26 C.F.R. 39.113(a) (13)–2.

Manifestly, whether a new partnership was formed at that time, whether there was a dissolution and distribution, or whether the old partnership exchanged its assets to continue business on a lesser scale, the substance of what was accomplished did not amount to a real conversion of capital or increase the cost basis to either the partnership or the individual partners. See Fritz v. C. I.

R., 5 Cir., 76 F.2d 460; Anderson v. United States, 9 Cir., 232 F.2d 794.

2. Even disregarding the effect of the duPont sale, petitioner insists that a collateral agreement entered between the Commissioner and the A. S. Miller Estate Partnership in 1956 providing a basis in the Primrose notes of $21,000 and in the Cooper notes of $39,500 was ignored by the Tax Court. The application of the collateral agreement would have protected considerably more of the payments from the appellation of "income" than reflected in the ultimate determination of the Commissioner and the approval of the Tax Court. The reason for this variation was the stipulation set forth in limine whereby the parties agreed upon the bases of the various assets held by the partnership prior to 1951. Although the Tax Court found this stipulation to be controlling, taxpayer insists that the stipulation referred only to *certain* assets of the partnership and no stipulation set the whole partnership basis in all its assets and that thus there is no repugnance between the two documents.

sary to decide this question in relation to the issue now under consideration since we have concluded that petitioner is not entitled to deduct the taxes in question whether the partnership owned the property or not. In our discussion, we assume, arguendo, that the partnership owned the property since this is the most favorable approach which we can take from petitioner's standpoint."

and concluded that the petitioner individually owned the income-producing securities as well as the income produced during the tax years and, inferentially, paid the real estate taxes assessed to the A. S. Miller Estate Partnership as a volunteer.

Petitioner contends that the partnership continued in existence as an entity after May 1951, owning all assets which had not been distributed in kind to the trust partners or in cash to Marcella duPont. He urges that the mere fact that his partnership interest was considerably greater during the taxable years than the interests of the other partners does not destroy the partnership and that the tax consequences must follow the agreement of the members of the partnership, Schwerin v. Commissioner, 78 U.S.App.D.C. 275, 139 F.2d 843. It is conceded, as found by the Tax Court, that the entire income of the partnership for the years 1953 and 1954 must be taxed against the petitioners [3] for they reported on their individual return the entire income less the deduction for real estate taxes.

The Tax Court did not find that the partnership arrangement was merely a sham and a device for tax evasion or avoidance, but appeared to regard it as a continuation of a valid partnership formed in 1946. Cf. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Batman et al. v. Commissioner, 5

Cir., 189 F.2d 107; Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Armstrong v. Commissioner, 10 Cir., 143 F.2d 700.

Although not specific in its conclusion, the Tax Court appeared concerned with the amount of control over the remaining liquid assets exercisable by the petitioner. This factor, of course, is an important one in the consideration of whether or not a partnership truly exists; but if it is concluded that an arrangement amounts to a partnership for tax purposes, the means used to achieve the partnership purposes cannot have the effect of excluding a valid partnership claim for deduction. Therefore, the Tax Court is directed to reconsider its opinion in the light of the test set forth by the Supreme Court in the Culbertson case, supra, 337 U.S. 733 at page 742, 69 S.Ct. 1210, at page 1214:

"The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, [Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670], but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

"(c) His *distributive share* of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b)." (Emphasis added.)

---

3. Internal Revenue Code of 1939, Sec. 182, 26 U.S.C.A. § 182:
   "In computing the net income of each partner, he shall include, *whether or not distribution is made to him*—
   \*　　\*　　\*　　\*　　\*

The Tax Court did not examine this issue and merely applied the reasoning that the partners settled accounts as to the securities in 1951, leaving only the real estate as proper partnership property. But the 1939 Internal Revenue Code, applicable here, does not provide for a constructive distribution of capital, as it does income, even as to a partnership in the process of liquidation.[4]

Since Section 187 of the 1939 Code, 26 U.S.C.A. § 187, provides for the filing of partnership returns and permits the computation of gain and loss generally on the same basis as an individual, the courts have long and consistently held that the partnership is an entity, requiring separate accounting, owning separate assets, and owing separate obligations for tax purposes from the individual partners, 6 Mertens Law of Federal Income Taxation § 3501; Adler et al. v. Nicholas, 10 Cir., 166 F.2d 674. As stated in Commissioner of Internal Revenue v. Shapiro, 6 Cir., 125 F.2d 532, 535, 144 A.L.R. 349:

"*  *  * It is a well settled rule of law that the joint effects of a partnership belong to the firm and not the partners and that a partner has no individual property in any specific assets of the firm, instead the interest of each partner in the partnership property is his share in the surplus, after the partnership debts are paid and after the partnership accounts are settled."

Therefore, if the Tax Court holds that there was a valid partnership prior to 1951 and further that no dissolution occurred by reason of agreement or as a matter of law subsequent to that time, the partnership earned income during 1953 and 1954 and was entitled to deductions for taxes paid under Section 23(c) of the Code, 26 U.S.C.A. § 23(c), prior to making distributions of income, Neuberger v. Commissioner, 311 U.S. 83, 61 S.Ct. 97, 85 L.Ed. 58.

If, however, the Tax Court concludes that the early partnership was dissolved in 1951 and a new partnership for the sole purpose of readying 851 Clarkson Street for sale was formed, the partnership is still entitled to show the taxes paid on the realty resulted in a loss during the tax period. And this is so regardless of the fact that one partner only furnished the wherewithal and regardless of obligations which exist between the partners as a result of the payment of a partnership obligation, Haley et al. v. Commissioner, 5 Cir., 203 F.2d 815; but cf. Lederer v. Parrish et al., 3 Cir., 16 F.2d 928.

An individual partner filing a return may claim a deduction for his proportionate share of the loss suffered by the partnership, Mosbacher v. United States, 311 U.S. 619, 61 S.Ct. 167, 85 L.Ed. 393, reversing D.C., 30 F.Supp. 703. It is the Commissioner's contention that the petitioner must be held to have claimed his proportionate share of the partnership loss by taking the standard deduction for individuals under the amended 1939 Code, Sec. 23(aa), 26 U.S.C.A. § 23(aa):

"(2) The standard deduction shall be in lieu of: (A) all deductions other than those which under section 22(n) are to be subtracted from gross income in computing adjusted gross income  *  *  *"

Since Section 22(n) permits the deduction from gross income of business ex-

---

4. Cf. Internal Revenue Code of 1954, Sec. 708, 26 U.S.C.A. § 708:

"(a) For purposes of this subchapter, an existing partnership shall be considered as continuing if it is not terminated.

"(b) For purposes of subsection (a), a partnership shall be considered as terminated only if—

"(A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or

"(B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits."

penses, the solution to these tangled concepts of partnership taxation can scarcely lie in the Commissioner's expedient of disallowing the statutory deduction to the taxpayer's business as an adjustment to gross income or the individual standard deduction based upon such adjusted gross income. And since the Tax Court avoided a decision on the key question of the existence of a partnership and its contractual ramifications, the findings of fact are inadequate for review and the case must be remanded for the purpose of determining the agreement between the alleged partners, the purpose of the payments made in partial liquidation, and the status of ownership of the various assets at times pertinent to correct accounting.

Reversed and remanded for proceedings consistent with this opinion.