J. FRANCIS DRISCOLL, JR., AND ANN K. DRISCOLL, ET AL.,[1] PETITIONERS,
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87497, 87503, 87504.   Filed October 17, 1961.

*Phillip B. Heller, Esq.*, for the petitioners.
*Theodore W. Hirsh, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioners' income tax as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| J. Francis Driscoll, Jr., and Ann K. Driscoll | 87497 | 1955 | $8,438.27 |
|  |  | 1956 | 4,048.89 |
| Arthur Edelstein and Marian L. Edelstein | 87503 | 1955 | 8,918.50 |
|  |  | 1956 | 4,467.80 |
| Lawrence I. Cohen and Myra L. Cohen | 87504 | 1955 | 8,795.74 |
|  |  | 1956 | 4,619.53 |

The question for decision is whether amounts received in April 1955 and December 1956 in retirement of notes qualify for treatment as amounts received in exchange for said notes under section 1232(a)(1) of the Internal Revenue Code of 1954.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are found accordingly.

Petitioners J. Francis Driscoll, Jr., and Ann K. Driscoll, Arthur Edelstein and Marian L. Edelstein, and Lawrence I. Cohen and Myra L. Cohen are husbands and wives who filed their joint Federal income tax returns for the years 1955 and 1956 with the district director of internal revenue at Chicago, Illinois.

Ellis Brothers of Illinois, Inc., was an Illinois corporation chartered in January 1948. Its principal place of business was at Chicago and it operated as a wholesale dealer in wines and liquors. Its principal shareholders were Julius and Albert E. Ellis. In July 1953 the corporation, for value received, executed and delivered its 4-percent demand promissory note in the sum of $49,736.61 to Julius and Albert

---

[1] Proceedings of the following petitioners are consolidated herewith: Arthur Edelstein and Marian L. Edelstein, Docket No. 87503; and Lawrence I. Cohen and Myra L. Cohen, Docket No. 87504.

Ellis. The note did not have interest coupons nor was it in registered form.

South Shore Liquors, Inc., was an Illinois corporation chartered in February 1946. Its principal place of business was Chicago and it operated as a wholesale dealer in wines and liquors. J. Francis Driscoll, Jr., was secretary and a director of South Shore and owned 375 shares of its stock; Arthur Edelstein was president and a director and owned 750 shares of its stock; and Myra L. Cohen was a director and owned 750 shares of its stock as nominee for Lawrence Cohen. South Shore had 2,380 shares of stock outstanding.

On December 15, 1953, South Shore acquired all of the outstanding capital stock of Ellis Brothers of Illinois, Inc., for about $800. On the same day Driscoll, Edelstein, and Cohen purchased the outstanding note from Julius and Albert Ellis for $3,500. The Ellises endorsed said note as follows: "WITHOUT RECOURSE pay to the order of" Driscoll, Edelstein, and Cohen. The petitioners are not related to the Ellises.

On February 1, 1954, South Shore and Ellis Brothers of Illinois, Inc., entered into a "Plan and Agreement of Merger" which became effective on March 1, 1954. Under the provisions of the plan the surviving corporation assumed all of the liabilities of each of the constituent corporations. The surviving corporation was to be Ellis Brothers of Illinois, Inc., which, as of the date of the merger, was renamed South Shore Liquors, Inc. As of this time the original Ellis Brothers of Illinois, Inc., had operating losses of about $25,000.

On February 28, 1955, the note was surrendered to new South Shore and it issued three separate notes dated February 28, 1955, payable on demand with interest at 4 percent. The notes were issued to Driscoll, Edelstein, and Cohen and were each in the amount of $16,578.87, i.e., one-third of $49,736.61, the face amount of the old note.

The net worth of new South Shore at the close of business February 28, 1955, was $1,157,646.91.

From July 1953 to July 1954 petitioners did not receive interest on the old note. From July 1954 to February 28, 1955, they received interest at the rate provided. Each received interest on the new notes at the rate provided from February 28, 1955, until the date of retirement of the notes.

On April 7, 1955, new South Shore paid $6,578.87 on each of the notes. The unpaid balance of $10,000 on each was retired on December 28, 1956, and the notes were canceled. On their 1955 tax returns petitioners reported $6,115.84 ($6,578.77 less $462.93 cost basis) as long-term capital gain; in 1956 they reported $9,296.27 ($10,000 less $703.73 cost basis) in the same manner.

Respondent determined the deficiency in question as to each of the petitioners by including in income in 1955, $15,412.20 (one-third of

$49,736.61 less one-third of $3,500). In explanation of his determination respondent explained that the exchange of the old note for the three new ones constituted a "taxable exchange as the result of which you realized gain * * * taxable as ordinary income."

Capital gain and loss provisions apply only where there has been a sale or exchange of a capital asset, section 1222, I.R.C. 1954. Ordinarily payment and discharge of an obligation is neither sale nor exchange within the commonly accepted meaning of the words. *Fairbanks* v. *United States*, 306 U.S. 436, 437. However, since the Revenue Act of 1934, provision has been made for capital gains treatment of amounts received upon the retirement of certain corporate and Government obligations. The statutory provision for this treatment, first enacted by the Revenue Act of 1934, appeared in the 1939 Code as section 117 (f), which provided:

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

Litigation developed as to whether the registration and coupon requirement meant the obligation had to be in that form at the time of original issue or only at the time of retirement. In *Lurie* v. *Commissioner*, 156 F. 2d 436 (C.A. 9, 1946), reversing *Babette G. Lurie*, 4 T.C. 1065, a corporate note when issued was neither registered nor coupon-bearing. Later the note was returned to the corporation and altered to registered form. The Ninth Circuit held the registration requirement of section 117(f), I.R.C. 1939, was satisfied: The note "must be in registered form at the time of its retirement, but it need not be in registered form at the time of its issuance."

We followed *Lurie* v. *Commissioner*, *supra*, in *Carl Oestreicher, Trustee*, 20 T.C. 12 (1953), and more recently (1959) in *Victor A. Miller*, 32 T.C. 954, reversed on another issue 285 F. 2d 843.

The 1954 Code changed the law as it appeared in section 117(f) of the 1939 Code by enacting section 1232(a)(1), which provides as follows:

SEC. 1232. BONDS AND OTHER EVIDENCES OF INDEBTEDNESS.

(a) GENERAL RULE.—For purposes of this subtitle, in the case of bonds, debentures, notes, or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or government or political subdivision thereof—

(1) RETIREMENT.—Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts

received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954).

It will be noticed that section 1232 of the 1954 Code removed the coupon and registration requirements as to corporate bonds or evidences of corporate indebtedness. This was a calculated change. (See the excerpt from the Senate Finance Committee report set out below.) However, section 1232 specifically excepted from such change retirement payments of unregistered or noncoupon bonds, or evidences of indebtedness "issued before January 1, 1955."

In the instant cases petitioners on December 15, 1953, each obtained a one-third interest in a corporate note which was issued on July 1, 1953, without coupons or in registered form. Obviously any retirement payment to the holders of this note would not be entitled to capital gains treatment under the statute because it was issued prior to January 1, 1955. However, on February 28, 1955, the single note was surrendered to the corporate debtor and a separate note given to each petitioner for his pro rata share of the original note. Petitioners argue their treatment of the note retirement payments made in 1955 and 1956 as capital gains is sanctioned by section 1232(a)(1), *supra*, in that they were payments to retire evidences of indebtedness "issued" February 28, 1955.

There is no merit in petitioners' position. Section 1232(a)(1) provides that retirement payments on corporate indebtedness will be considered an "exchange," but the parenthetical language exempts from the preferential treatment of the section retirement payments on evidences of indebtedness issued before January 1, 1955, which were not issued in coupon or registered form or put in that form by March 1, 1954. When the section is read as a whole, it is obvious that in the parenthetical exception of section 1232(a)(1) the word "issued" means "initially issued." If this meaning is not given to "issued" the parenthetical exception is effectively emasculated because it could be entirely circumvented by the simple mechanical expedient to which the petitioners here resorted.

As pointed out earlier, prior to the 1954 Code, the only corporate obligations that qualified retirement payments for capital gains or loss treatment were those that were in registered or coupon form. Sec. 117(f), I.R.C. 1939. Under *Lurie* v. *Commissioner*, *supra*, the obligation need not have been issued in registered or coupon form but it had to be put in such form before retirement in order to have the retirement payments qualify for capital gains. Thus, under the law prior to the 1954 Code, no retirement payments on existing corporate obligations that were not in coupon or registered form at the time of such payment would qualify. Section 1232, effective as of

January 1, 1954, authorized no capital gains treatment for retirement payments on such obligations unless they were put in coupon or registered form by March 1, 1954.

Under petitioners' contention corporations could, after January 1, 1955 (when the coupon and registration restrictions were abolished), call in outside bonds or other evidences of indebtedness just prior to retirement, issue new bonds or evidences of indebtedness in lieu thereof, and thus assure favorable capital gains treatment for retirement payments to the holders.

We cannot underwrite this result, nor do we believe Congress intended it. An examination of the legislative history of the section bolsters our conclusion. The Senate Finance Committee report relating to section 1232 states, in part, as follows:

Paragraph (1) restates the content of present law. For bonds or other evidences of indebtedness issued after December 31, 1954, the bill abandons the present restriction of capital treatment on retirement to bonds and other evidences of indebtedness which have interest coupons attached or which are in registered form. Redemption of all bonds and other evidences of indebtedness will receive capital gain or loss treatment on redemption if issued after December 31, 1954, and if they are otherwise capital assets, except to the extent that the recovery of issue discount is subject to paragraph (2).

A change is made in paragraph (1) in the treatment of certain bonds and other evidences of indebtedness issued prior to January 1, 1955, without interest coupons and not in registered form. Under the decision in *Lurie* v. *Commissioner* (156 F. 2d 436), these securities could be put in registered form at any time prior to retirement, and they would be treated as having been in registered form from the date of acquisition by the holder at retirement. This decision is overruled, prospectively, by providing that nonregistered, noncoupon bonds issued prior to March 1, 1954, must be in registered form on March 1, 1954, in order for their retirement to be treated as a sale or exchange. A technical amendment was made to the House bill to carry out the intention to continue present law treatment, with the above exception, for bonds issued between March 1, 1954, and December 31, 1954. While this action will only have effect with respect to evidences of indebtedness issued prior to January 1, 1954, it will have application as long as these evidences are outstanding. [S. Rept. No. 1622, 83d Cong., 2d Sess., p. 433 (1954).]

Taking everything into account, we believe that the obvious interpretation of the statute is that the parenthetical language of section 1232(a)(1) was intended to freeze the form of corporate evidences of indebtedness extant as of March 1, 1954. We therefore construe the statute as not granting capital gains treatment to retirement payments of corporate obligations existing before January 1, 1955, that were initially evidenced by unregistered and noncoupon evidences of indebtedness, and not in coupon form by March 1, 1954. So construed, section 1232(a)(1) is not available to petitioners here. We uphold respondent's determinations of deficiencies.

Because of other uncontested adjustments,

*Decisions will be entered under Rule 50.*